**Earl French COX, Jr., Appellant,**

v.

**UNITED STATES of America,
Appellee.**

No. 71–1384.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 7, 1972.

Decided Jan. 29, 1973.

Joseph Forer, Washington, D. C., court-appointed counsel, for appellant.

Thomas P. McNamara, U. S. Atty. (Warren H. Coolidge, U. S. Atty., F. Stuart Clarke, Asst. U. S. Atty., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, BOREMAN and BRYAN, Senior Circuit Judges, and WINTER, CRAVEN, BUTZNER, RUSSELL, FIELD and WIDENER, Circuit Judges, sitting en banc.

HAYNSWORTH, Chief Judge:

A majority of a divided panel of this Court concluded:

(1) That the juvenile defendant was entitled to a limited hearing before the

Attorney General could direct that he be proceeded against as an adult, and

(2) That, having been tried as an adult, a sentence under the Federal Youth Corrections Act was mandatory, unless the trial court found that the youthful offender "will not derive benefit from treatment" under that Act.

A petition for rehearing *en banc* was granted and, after an *en banc* rehearing, a majority of the Court is in agreement with the dissenting member of the panel on the first point and with the majority of the panel on the second.

The opinions of Judge Winter for the majority and Senior Judge Bryan in dissent are appended, and the reader is referred to them for a more detailed statement of the facts and exposition of the legal issues.

I

Cox, who was then seventeen years old, with four companions, each of whom had passed his eighteenth birthday, robbed a bank in North Carolina. The United States Attorney wrote to the Attorney General, requesting permission to try Cox as an adult offender rather than as a juvenile. He reported that there were other pending charges against Cox in the Metropolitan Washington, D. C., area, including a charge of armed robbery, a charge of housebreaking and a charge of attempted larceny of an automobile. He reported information that Cox was the leader of the band and that it was he who supplied the automobile used in going to the bank and fleeing from it.

In due course, the Attorney General authorized and directed the United States Attorney to proceed against Cox as an adult, stating, however, that the United States Attorney might wish to suggest to the Court a sentence under the Youth Corrections Act.

In the federal system there are no separate juvenile courts. The district courts have jurisdiction to try juveniles, youths who have not yet attained their eighteenth birthdays. Under 18 U.S.C. A. § 5032, a juvenile charged with a federal offense not punishable by death or life imprisonment shall be prosecuted as a juvenile delinquent, if he consents to that procedure and unless the Attorney General has expressly directed that he be prosecuted as an adult. We do not have the problem of judicial waiver of the primary jurisdiction of a juvenile court to the jurisdiction of a general trial court. What is involved is a decision by the Attorney General to charge a juvenile with juvenile delinquency based upon his alleged violation of the law and to proceed against him as a juvenile, or to charge him as an adult with the substantive transgression of the law. As Judge Bryan points out, this is a prosecutorial decision beyond the reach of the due process rights of counsel and a hearing.

When the question is one of waiver of jurisdiction of a juvenile court and it is to be decided by a judge of the juvenile court, it is clear that the juvenile is entitled to a hearing on the question of waiver and the assistance of counsel in that hearing.[1]

This is entirely consistent with our tradition that the decisions of judges in judicial proceedings affecting substantial rights of persons charged with criminal violations shall be reached only after an opportunity is afforded for a full and fair hearing with the benefit of counsel.

We have no such tradition with respect to prosecutorial decisions to seek an indictment, or not to seek one, to make or not to make a charge, or to charge a greater offense or a lesser one. Such decisions have a substantial impact on the outcome of subsequent proceedings. Indeed, they may foreclose such proceedings, but they are left for determination by the prosecutor without a

1. Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84; Kemplen v. State of Maryland, 4 Cir., 428 F.2d 169.

hearing and without extension of any of the other due process protections to the person whose exposure and degree of exposure to prosecution the prosecutor determines. The decision to charge Cox with bank robbery rather than with juvenile delinquency is just such a prosecutorial decision.

It is true, of course, that, from the defendant's viewpoint, the effect and consequences of the prosecutorial decision are the same as the effect and consequences of a judicial decision to waive juvenile court jurisdiction in a judicial system which provides such courts.

To Cox, the consequences of a decision to prosecute him for bank robbery rather than for juvenile delinquency are the same, whether, within the remaining framework of the federal statutes, the decision is made by the Attorney General as a prosecutorial function or by a judge as a judicial function. Effects and consequences, however, are not the sole measure of the reach of the Bill of Rights. Judicial proceedings must be clothed in the raiment of due process, while the processes of prosecutorial decision-making wear very different garb. It is one thing to hold, as we have, that when a state makes waiver of a juvenile court's jurisdiction a judicial function, the judge must cast about the defendant all of the trappings of due process, but it does not necessarily follow that a state or the United States may not constitutionally treat the basic question as a prosecutorial function, making a highly placed, supervisory prosecutor responsible for deciding whether to proceed against a juvenile as an adult. If it does, as the United States has, the character of the proceeding, rather than its consequences to the accused, are largely determinative of his rights.

■■ Many of the protections of the Bill of Rights extend far beyond the courtroom, of course, but the guaranty of a hearing found in the due process clause of the Fifth Amendment has traditionally been limited to judicial and quasi-judicial proceedings. It has never been held applicable to the processes of prosecutorial decision-making.[2] The only proper question here, therefore, is whether the general statutory scheme is constitutional, whether Congress reasonably might vest in the Attorney General, rather than in a judge in a judicial proceeding, the responsibility of deciding whether or not to prosecute a juvenile as an adult. That question is appropriately answered affirmatively.

The reasonableness of the allocation of this function to the Attorney General is reinforced by the provisions of the Youth Corrections Act.[3] That Act provides special treatment and rehabilitative measures for youths sentenced under it, and the youth may earn early conditional and unconditional release. Significantly, under § 5021, unconditional release from confinement, parole or probation before expiration of the maximum term operates automatically to vacate the conviction and clear the youth's criminal record. In substantial measure, therefore, the judge, after conviction, when he has the benefit of information disclosed in the trial and in presentence reports, may extend to the youth an opportunity to gain many of the advantages he would have derived from initial treatment as a juvenile delinquent. To that extent, a decision of the Attorney General to proceed against a youth as an adult is not final, for special treatment as a youthful offender who may earn a clearance of his criminal record remains an available and preferred sentencing alternative. This was

---

2. That identity of consequences is not necessarily determinative of the reach of constitutional protections is illustrated by Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411. To Kirby, the consequences of his identification by the robbery victim were the same regardless of the status of the criminal proceeding, but he was held unentitled to counsel at the time of a one-on-one confrontation since it occurred before the adversary criminal process had begun.

3. 18 U.S.C.A. § 5005 et seq.

explicitly in the mind of the Attorney General in this case, for, in directing that Cox be proceeded against as an adult, he suggested a sentence under the Youth Corrections Act.

## II

In this Court, for the first time, the defendant contends that the Attorney General's decision to direct adult proceedings against Cox is reviewable under the Administrative Procedure Act.[4] The claim of abuse of discretion rests primarily upon the Attorney General's reference in his decision to an assumption of unfairness to the co-defendants, each of whom had passed his eighteenth birthday, if they were proceeded against as adults while Cox was treated as a juvenile delinquent.

■ Aside from the fact that these questions were not raised in the District Court, we need not consider the question of reviewability of the Attorney General's exercise of the discretion the statute vests in him. Unfairness to co-defendants may have been an irrelevant consideration, but the fact that Cox was close to eighteen, the nature of the crime and the presence of other serious charges against him foreclose any judicial finding of abuse of discretion. There was no inappropriateness in the Attorney General's conclusion that Cox should be proceeded against as an adult, leaving for later determination by the sentencing judge the extent to which he should exercise the broad powers given him by the Youth Corrections Act to treat Cox as a youthful offender.

## III

■ A majority of the *en banc* court agrees with the panel majority that the Youth Corrections Act provides a preferred sentencing alternative which must be used in sentencing a youthful offender unless, in the language of § 5010(d), "the court shall find that the youth offender will not derive benefit from treatment under subsection (b) or (c) * * *."

Ordinarily, in the absence of an explicit finding to that effect, we would treat it as implicit in the imposition of some other sentence conditionally authorized by § 5010(d). Here, however, in the postconviction proceeding, the District Judge said explicitly he had made no such finding and, referring to the legislative history, thought none was required. In his view the Youth Corrections Act provides only another sentencing alternative with no conditional preference over other alternatives. In this case, therefore, we cannot find implicit in what the judge did a finding he explicitly disclaims.

■ We think the language of the statute is plain. The Youth Corrections Act must be used unless the sentencing judge finds that treatment under the Act would not be beneficial. That finding should be based upon reason, though the reasons may stem from such various sources as disclosures at the trial, the defendant's attitude and demeanor, information in a presentence report and revelations during the sentencing hearing. When the implication of such a finding, based upon reason, is negated by the trial judge's declarations, the imposition of a general sentence as, upon an adult, is unwarranted.

The absence of such a finding, explicit or implicit, in this case requires a remand with directions that the District Judge explicitly find whether or not treatment under the Act would be beneficial to Cox. Should he find that it would not be, he should state his reasons, but leave the sentence undisturbed. Should he find that Cox would benefit from treatment under the Act, he should vacate the sentence and recall Cox for resentencing under the Act.

Remanded with directions.

HAYNSWORTH, Chief Judge, BRYAN, Senior Circuit Judge, and

---

4. 5 U.S.C.A. § 701, et seq.

CRAVEN, RUSSELL, FIELD and WIDENER, Circuit Judges, concur in Parts I and II of the foregoing opinion.

HAYNSWORTH, Chief Judge, BOREMAN, Senior Circuit Judge, and WINTER, CRAVEN, BUTZNER, RUSSELL and FIELD, Circuit Judges, join in Part III of the foregoing opinion.

### APPENDIX

### Opinions of the Panel

WINTER, Circuit Judge:

This case presents two issues: (1) Was petitioner, who was seventeen years old when the Attorney General determined that he be proceeded against as an adult rather than as a juvenile, entitled to counsel and to a "hearing" when the determination was made, and (2) If so, what relief should now be granted since those rights were denied? The district court concluded that the right to counsel did not attach and denied relief under 28 U.S.C.A. § 2255, but we conclude otherwise. Accordingly, we reverse the judgment and remand the case for further proceedings.

### I

Petitioner, Earl French Cox, Jr., and four companions held up a bank in Goldsboro, North Carolina, on June 5, 1968, and escaped with $7,752. All five were arrested forty minutes later in the getaway car. Cox was born February 23, 1951, and he was seventeen years old at the time of the offense. His codefendants were all over the age of eighteen.

On June 24, 1968, the United States Attorney wrote the Department of Justice requesting permission to try Cox as an adult offender instead of as a juvenile. The letter stated:

Information before us is that the subject has been residing in Washington, D. C., area and has the following charges pending against him:

1. Housebreaking in Rockville, Maryland.

2. Tampering with automobile and attempting grand larceny, Washington, D. C.

3. Armed robbery.

Our investigative report further reflects that all of the five defendants in this case are approximately the same age. This particular defendant appears to have been the instigator of this robbery. The other four subjects are college students. The subject furnished the car which was used in the bank robbery. We have consulted with our Chief Probation Officer and we have all agreed that it would be inequitable to try this defendant as a juvenile and try the others as adults. Should he be convicted the incarceration period would be limited to his 21st birthday. In all likelihood the other defendants would receive far lengthier sentences. We do not think this would be fair in view of the part played by this defendant in the bank robbery.

We respectfully request that we be allowed to try the subject as an adult.

On July 8, 1968, the Department of Justice replied, directing prosecution of Cox as an adult and suggesting the possibility of sentencing Cox and his codefendants under the Youth Corrections Act. The reply read:

We have obtained the Federal Bureau of Investigation report in this matter, dated June 12, 1968 which reflects that the subject, together with four youths over 18, on June 5, 1968, robbed the Branch Banking and Trust Company, North Williams Street Branch, Goldsboro, at gun point. This subject who is from the Washington, D. C. area has, you advise, other charges pending against him including housebreaking, tampering with automobile and attempted grand larceny and armed robbery. It further appears that the subject, Cox, furnished the car used in the robbery

and was the ring leader in the enterprise.

In view of the factual situation outlined above you are hereby authorized and directed to proceed against Earl French Cox, Jr., under adult criminal procedure for violation of the Bank Robbery Statute, 18 U.S.C. § 2113(d).

At the appropriate time you may wish to suggest to the court that these youths be sentenced under the Youth Corrections Act.

The statutory scheme which generated this exchange of correspondence may be briefly stated by reference to various sections of Title 18 U.S.C.A. Section 5031 defines a "juvenile" as a person who has not attained his eighteenth birthday and "juvenile delinquency" as a violation of a law of the United States committed by a juvenile not punishable by death or life imprisonment. Section 5032 then directs that

A juvenile alleged to have committed one or more acts in violation of a law of the United States not punishable by death or life imprisonment, and not surrendered to the authorities of a state, shall be proceeded against as a juvenile delinquent if he consents to such procedure, unless the Attorney General, in his discretion, has expressly directed otherwise.[1]

In such event the juvenile shall be proceeded against by information and no criminal prosecution shall be instituted for the alleged violation.

By the provisions of § 5033 district courts of the United States are vested with jurisdiction of proceedings against juvenile delinquents. The proceedings are non-jury and the juvenile's consent required by § 5032 is required to be given in writing before a United States district judge, who must apprise the juvenile of his rights and of the consequences of such consent, in particular that it constitutes a waiver of a trial by jury.[2] If the district court finds a juvenile to be a delinquent, § 5034 fixes the penalties which may be imposed. The juvenile may be placed on probation for a period not exceeding his minority or committed to the custody of the Attorney General for a like period (but not exceeding the term which might be imposed had he been tried and convicted as an adult). If committed to the custody of the Attorney General, the latter is authorized to designate any public or private agency or foster home for the custody, care, subsistence, education and training of the juvenile during the period for which he is committed.

At the time that the United States Attorney obtained the authorization of the Attorney General to proceed against Cox as an adult, Cox was not represented by counsel. He was not given notice that the request of the United States Attorney was made or granted, and was given no opportunity to controvert the data considered by the Attorney General or to advance other data which might support juvenile proceedings. While the exchange occurred, Cox was away from home and in custody. He did not know, and had not been informed, that he had a right to be proceeded against as a juvenile unless the Attorney General directed otherwise.

On July 12, 1968, Cox's mother retained counsel to represent him. Cox waived formal indictment and, on July 30, 1968, he entered a plea of guilty to a criminal information charging that he and four codefendants committed an armed bank robbery in violation of 18 U.S.C.A. § 2113(d). Cox and each of his four codefendants were sentenced to imprisonment for a term of fifteen years under the provisions of 18 U.S.C.

1. The requirement that a "juvenile" consent to being proceeded against as a "juvenile delinquent" was written into the statute to anticipate the problem of a defendant's assertion of his constitutional right to a jury trial. "The federal statute . . . does not impair any right to a jury trial. It affords a juvenile an opportunity to choose his forum." Cotton v. United States, 446 F.2d 107, 110 (8 Cir. 1971).

2. See, n. 1, supra.

A. § 4208(a)(2). We were told in oral argument that each of Cox's codefendants has now been released, but Cox has remained in custody.

## II

Cox contends that the determination of the United States Attorney and the Attorney General to proceed against him as an adult was unconstitutional in that (1) at the time of the decision he lacked counsel and was not advised that he had a right to counsel, (2) the decision was not made in accordance with due process, and (3) the decision was arbitrary and capricious. The first two facets of this contention rest on our recent decision in Kemplen v. State of Maryland, 428 F.2d 169 (4 Cir. 1970). We think *Kemplen* controlling and the arguments to be meritorious.

In *Kemplen* we were concerned with a waiver of juvenile jurisdiction under a Maryland statute which permitted a juvenile court to waive its jurisdiction and thus to permit a juvenile to be tried and sentenced as an adult. Kemplen and his parents were present at the "waiver hearing," but Kemplen was unrepresented and he had neither been informed of his right to retain counsel nor had counsel been appointed to represent him. Relying principally upon Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), and In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 597 (1967), we held that a juvenile was entitled to counsel at the "waiver hearing" and, in order to make the right to coun-

sel effective, that the juvenile, his parents and counsel must be given adequate notice of the nature of the proceeding, its date and the charges to be considered, so that they might have a reasonable opportunity to prepare and present the juvenile's case as to waiver. We reached these results because we found that for Kemplen waiver was a very critical stage in the proceedings against him, inasmuch as he could receive (and in fact did receive) an active prison sentence, rather than commitment to a training school for rehabilitation, he would have a permanent criminal record and, moreover, his conviction as an adult triggered commitment proceedings against him under the Maryland Defective Delinquency statute, which authorized indeterminate incarceration for certain sociopaths.[3]

The consequences under federal law of a determination that one under the age of eighteen could be proceeded against as an adult bear close analogy to the consequences under Maryland law. Under federal law an adult, unless he is a youthful offender sentenced under the Federal Youth Corrections Act and successfully completes that program before expiration of his sentence,[4] acquires the stigma of a permanent criminal record. More importantly, he may be incarcerated for a longer period if sentenced as an adult than if dealt with as a juvenile, unless he has committed a crime, the maximum sentence for which is less than the difference between his age at the time of the offense and his majority.

3. For a like holding, see United States ex rel. Turner v. Rundle, 438 F.2d 839 (3 Cir. 1971).

4. The Federal Youth Corrections Act is codified in 18 U.S.C.A. §§ 5005, et seq. It applies to youth offenders which are defined as persons under the age of twenty-two years at the time of conviction. By 18 U.S.C.A. § 4209, the Act may also be applied to those between the ages of twenty-two and twenty-six if the court finds that they may be benefited from treatment under the Act. In general the Act permits an indeterminate sentence,

with or without service, or probation without the imposition of sentence, until discharge of the offender which must occur not later than four years from commitment (with supervision of not more than an additional two years). An offender on probation or released conditionally after a period of commitment may be discharged after one year. Whenever an offender is released unconditionally before the expiration of the maximum sentence imposed upon him, his conviction is automatically set aside, and thus he is relieved from the future encumbrance of a prior criminal record.

Longer incarceration appears to be the result here, since Cox has achieved his majority and is still incarcerated, notwithstanding that he was eligible for parole as soon as the sentence was pronounced. Whatever sentence is pronounced, if any part of it must be served, one treated as an adult offender is sentenced to a regular prison, or if he is a youth offender and has been dealt with under the Federal Youth Corrections Act, he is sentenced to a federal youth correction institution. In contrast, a juvenile may be incarcerated in a public or private agency or foster home for custody, care, subsistence, education and training of juveniles—in short, to a rehabilitative program especially designed to rehabilitate and retrain the juvenile offender. Thus, we can no less conclude in the instant case than in *Kemplen* that the determination that a juvenile be dealt with as an adult offender is a critical stage in the proceedings against him, so that the right to counsel fully attaches.

The government argues that the determination of whether to treat Cox as a juvenile or as an adult was a prosecutorial decision, to which the right to counsel should not attach. We find the argument unpersuasive. Prosecutorial decisions involve the determination of such issues as who to charge, what charge should be brought, what charges should be dropped, and when proceedings should be initiated. The decision by the United States Attorney to prosecute Cox for armed bank robbery was a prosecutorial decision, as perhaps was the request of the United States Attorney for authorization to treat Cox as an adult.

In contrast to typical prosecutorial decisions, was the determination by the Attorney General to have Cox tried as an adult. At the time of the Attorney General's determination, the decision to proceed with the prosecution of Cox for armed bank robbery had already been made and, hence, Cox's right, or at least his privilege, to be proceeded against as a juvenile had attached. What the Attorney General determined was not whether Cox should be prosecuted, but rather the process by which guilt or innocence was to be determined and, if guilt was found, the types of punishment or rehabilitative measures to be taken, including the maximum punishable period of incarceration. It should be noted, moreover, that traditionally the decision to waive juvenile proceedings has not been considered a prosecutorial one. Under state law, where the concept of juvenile jurisdiction and the special treatment of juveniles originated, waiver decisions are usually made by judicial officers after adversary proceedings. Necessarily, they encompass at least an informal fact-finding process.[5]

We emphasize that our decision does not rest on the negative, i. e., that this is not a prosecutorial decision. Rather, our decision is based on the fact that the same consequences which attach to waiver in state court proceedings attach here. Because the consequences are the same, a juvenile in federal proceedings should be entitled to the same procedural safeguards which attach to waiver proceedings in state courts. We, therefore, conclude to apply and follow *Kemplen*.

While we thus conclude that Cox should have been told of his right to have counsel, and to have counsel appointed to represent him if his parents could not provide counsel for him, and, further, that Cox, his parents and counsel should have been given notice of the request of the United States Attorney to the Attorney General and an opportunity to present Cox's opposition thereto, an

---

5. As the exchange of correspondence between the United States Attorney and the Attorney General reflects, one of the reasons why juvenile proceedings were waived was that Cox was thought to be the ringleader of the group of armed bank robbers. In an affidavit of his codefendants tendered on appeal, this fact is sharply disputed. There may be other facts which are disputed. Of course, being the ringleader or not would be relevant only to the extent that it would bear on the probability of successful rehabilitation were Cox dealt with as a juvenile.

additional word about the "hearing" should be expressed. We do not suggest that due process requires that the Attorney General conduct a formal hearing with presentation of evidence limited by strict rules of admissibility, confrontation, cross-examination, the making of a transcript, etc. Cf. Caulder v. Durham Housing Authority, 433 F.2d 998, 1004 n. 3 (4 Cir. 1970), cert. denied, 401 U.S. 1003, 91 S.Ct. 1228, 28 L.Ed.2d 539 (1971). It seems to us that it is sufficient if a copy of the request of the United States Attorney to the Attorney General, with the supporting data and reasons, is furnished to the juvenile, his parents, and his attorney, and that they be given an opportunity to submit additional data to the Attorney General to show why a juvenile proceeding would be more appropriate than an adult proceeding, with service, of course, upon the United States Attorney and his right to rebut. These proofs may be received informally without regard to the strict rules of evidence, provided that materiality and relevance are maintained. If the Attorney General considers data in support of the request of the United States Attorney other than that furnished by the latter, such data should also be made known to the juvenile and his representatives, and the same opportunity to rebut these data should be afforded. If the Attorney General concludes to grant the request of the United States Attorney, he should state so in writing, assigning he reasons therefor; and a copy should be given to the juvenile and his representatives, as well as to the United States Attorney.

### III

Having decided the problem of general significance, we come to the question of the specific relief which should be granted to Cox. The district court concluded that it had authority to review the Attorney General's decision under the Administrative Procedure Act, and we think correctly so. The APA does exclude from judicial review "agency action . . . committed to agency discretion by law." 5 U.S.C.A. § 701(a)(2) and 18 U.S.C.A. § 5032 does not set forth a specific standard by which the Attorney General shall make a determination of which juveniles are to be treated as adult offenders. Moreover, the only two cases which have dealt with the problem have treated a decision by the Attorney General as absolute and final. Ramirez v. United States, 238 F.Supp. 763 (S.D.N.Y.1965); United States v. Verra, 203 F.Supp. 87 (S.D.N.Y.1962). But the Attorney General is an agency, the actions of which are otherwise reviewable, e. g., Carlson v. Landon, 342 U.S. 524, 540, 72 S.Ct. 525, 96 L.Ed. 547 (1950); cf. Littel v. Morton, 445 F.2d 1207 (4 Cir. 1971). Although his discretion under § 5032 is broad, reference to the legislative history of the statute shows that he must balance the sometimes conflicting interests of what is best for the juvenile, and the apparent possibility of his successful rehabilitation, with the interests of society for present and future protection. S.R. 1989, 85th Cong., 3d Sess., June 6, 1938. These considerations, together with the fact that he performs a quasi-judicial function in making a determination under § 5032, persuades us that his decision is reviewable. Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).

On petition for rehearing in *Kemplen*, we said that "the proper remedy for this petitioner . . . will be the reconstruction in the Maryland courts, or failing that, in the United States District Court, of the circumstances bearing on the waiver question and a determination *nunc pro tunc* of what the juvenile court judge would probably have done in light of all the information then available that might reasonably have been proffered by competent counsel." 428 F.2d at 178. We added that if the court found that waiver was inappropriate,

Kemplen's conviction should be vacated and he should be released, because, being over twenty-one, Kemplen could not be tried as a juvenile. But if the court found the waiver as appropriate when made, despite lack of counsel and notice, the adult conviction should stand and relief should be denied.

Here, we think the propriety of the waiver, in the full light of the circumstances which were considered and which might have been considered, should be redetermined by the Attorney General with due regard to fifth and sixth amendment rights. The issue will be whether or not, as of July, 1968, Cox was or was not a fit candidate for the rehabilitation procedures established by Congress for the treatment of juveniles and whether the need of society for present and future protection from Cox, as of that date, outweighed the benefit which might accrue to Cox from such treatment.[6] If the Attorney General concludes that the waiver would not have been granted, Cox's conviction should be set aside and he should be discharged without a retrial since he is now over twenty-one; but if he concludes that the waiver would still have been granted, Cox's conviction should stand. In the latter event the district court should resentence Cox. If the Attorney General should decline to make the redetermination, then it should be made by the district court. And if the Attorney General redetermines that Cox should be treated as an adult, his decision may be reviewed under APA for possible abuse of discretion. Littel v. Morton, 445 F.2d at 1211.

The need for resentencing, should the Attorney General or the district court conclude that Cox should be treated as an adult, arises from these facts: When Cox was sentenced (July 30, 1968), he had reached only his seventeenth birthday; and consequently, if not treated as a juvenile he fell within the definition of a "youth offender," i. e., "a person under the age of twenty-two years at the time of conviction," within the meaning of the Federal Youth Corrections Act, and he was entitled to the benefits of that Act. 18 U.S.C.A. § 5006; 18 U.S.C.A. §§ 5005 et seq.[7] Section 5010 prescribes the sentencing alternatives under the Act: subsection (a) permits suspension of the imposition or execution of sentence and placement of the youth offender on probation; subsection (b) permits sentencing the youth offender to the custody of the Attorney General for a period not exceeding four years with unconditional release not later than six years, in lieu of the period of imprisonment otherwise provided by law; and subsection (c) permits sentencing the youth offender to the custody of the Attorney General for the period otherwise provided by law, if the court concludes that the youth offender may not derive maximum benefit from treatment within six years, with conditional release not later than two years before the expiration of the term imposed. A sentence under § 5010(b) or (c) is to a special youth offender treatment institution, § 5011. Section 5010(d) provides another alternative to § 5010(a), (b) and (c), and it states:

"(d) *If the court shall find* that the youth offender will not derive benefit from treatment under subsection (b) or (c), then the court *may* sentence the youth offender under any other applicable penalty provision." (emphasis added).

6. We inject our view on one of the reasons urged by the United States Attorney and the Attorney General for dealing with Cox as an adult, i. e., that treatment of Cox as a juvenile would be "unfair" to his non-juvenile codefendants. Obviously, this "reason" could be invoked in every case in which there were two or more defendants and not all were under the age of eighteen, irrespective of any other considerations. We do not consider it a valid reason. Congress did not limit the application of §§ 5031, et seq., to cases involving a single defendant. It would follow that § 5032 should not be construed to embody such test.

7. As of the date of this decision, Cox is still only twenty-one years old.

Cox was sentenced under § 5010(d) because he was treated as an adult and sentenced to a term of fifteen years.

In two recent cases the District of Columbia Circuit has held that under "§ 5010(d), the court must affirmatively find that the youth offender will *not* benefit from rehabilitative treatment before the offender can be sentenced as an adult . . . " United States v. Waters, 141 U.S.App.D.C. 289, 437 F.2d 722, 724 (1970); United States v. Ward, 147 U.S.App.D.C. 149, 454 F.2d 992 (1971). We agree with these decisions and have concluded to follow them.

In the instant case the district court made no finding that Cox would not benefit from treatment as a youth offender; and when on motion under 28 U.S.C.A. § 2255, the absence of the finding was urged as a ground warranting relief, the district court found as a fact that "[i]n sentencing Petitioner, the court made no finding that Petitioner would not benefit from treatment under [the Act]," and specifically rejected the holding of *Waters* on the ground that the legislative history of the Act made it clear that the Act was not intended to remove the discretion of the district judge whether or not to sentence a convicted youthful offender under the statute governing his offense or under the Act.

Irrespective of the legislative history, the language of the Act is quite specific. It requires a finding that a youth offender will not benefit from treatment under the Act before the district court "may" sentence the youth as an adult. We agree with the language in *Waters* that "[w]hile the District Court does have discretion to sentence a 19-year-old 'youth offender' under either the applicable statutory offense provision or the Youth Corrections Act, we believe this discretion is circumscribed by the findings of fact in the individual case which the District Judge is required to make either explicitly or implicitly," 437 F.2d at 725, and "[w]hile the District Court is given discretion in regard to sentenc-ing, that discretion must be exercised in accordance with the intention of Congress underlying the statutory provisions . . . ", 437 F.2d at 727. Like *Ward*, the implications which can be drawn from the failure to make an explicit finding in this case are too uncertain for us to conclude that there was an implicit finding that Cox would not benefit from sentencing under the Act, especially when the district court found that it had made no finding. Accordingly, we will require that he be resentenced properly if it is determined that he not be treated as a juvenile. Of course, on resentencing, unless the district court has a firm evidentiary base on which to conclude that he would not have benefitted from treatment under the Act, Cox should be resentenced under the Act.

IV

In oral argument, counsel urged us to release Cox on bail pending further proceedings in the district court. We think this request more properly should be directed in the first instance to the district court, which has ample authority, in its discretion, to grant it.

Reversed and remanded.

ALBERT V. BRYAN, Senior Circuit Judge (dissenting):

I would affirm. The majority today looks to Kemplen v. Maryland, 428 F.2d 169 (4 Cir. 1970), as justification for reversal. Actually, for me that decision does not touch the instant case; rather its determinant completely divorces it from consideration here. There, appellant was already before the court, and the court, not the prosecutor, was called upon to decide the most appropriate forum for the trial. The question was purely *judicial* and counsel was required to develop defendant's most advantageous course.

Just the opposite obtained here. Unlike *Kemplen*, the accused was not before the court. No court was making a decision as to his welfare. Appellant com-

plains rather of an act of the Attorney General—a step both inherently within the exclusive prerogative of the Executive branch of Government and explicitly authorized by Congress.

The Judiciary cannot trespass upon the legitimate province of the Executive. Which cases, if any, are to be prosecuted, and where, are questions exclusively within the latter's domain. Even after an indictment is returned, the court cannot force it to trial against the Government's decision not to prosecute at all. United States v. Cox, 342 F.2d 167 (5 Cir.), cert. denied, 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965).

If the Attorney General elects to proceed against a juvenile as an adult, that is an Executive determination. No authority is cited by appellant suggesting that the Executive's preference may be exercised only after a consultation or hearing is accorded the accused to ascertain if the Government's determination is justifiable. If that were required, the Attorney General or the United States Attorney would be always obliged to inquire, by conference or hearing, whether a defendant's case should take its lawful course: for example, whether to present it to a grand jury, whether to prosecute it as murder or manslaughter, or as a misdemeanor or a felony. Obviously, such a requirement would be harmful to the public interest as an undue encumbrance upon the performance of the Executive's duties.

With regard to the potential disposition of this case under the Federal Youth Corrections Act, 18 U.S.C. § 5005 et seq., I see no fatal procedural omission by the District Court. In my judgment "find", appearing in § 5010(b), (c), and (d), does not demand formal declarations by the court upon the existence of the conditions stated in those sections. However, assuming without agreeing, that these formalities are required, as indicated in United States v. Ward, 147 U.S.App.D.C. 149, 454 F.2d 992, 994 (1971) and United States v. Waters, 141 U.S.App.D.C. 289, 437 F.2d

722, 725–726 (1970), those decisions acknowledge that their exactions may be satisfied "implicitly". Here, the sentence of the District Court by demonstration conclusively implies a "finding" that the defendant "will not derive benefit from treatment" under the Act.

The majority interjects that the District Judge, in his § 2255 memorandum opinion of February 16, 1971, stated that "[he] made no finding that Petitioner would not benefit from treatment under the Act". On the day of sentence —July 30, 1968 some two years and 7 months earlier—the judge rejected counsel's specific request for consideration of the utilization of the Federal Youth Corrections Act, the attorney pleading:

"I firmly believe that if this boy is sentenced under the Federal Youth Corrections Act, that it will be in the best interest not only of this boy, but of society in general. He is a very bright boy. If he could be directed toward a gainful path, it would be a very fine thing."

"The Court: Yes, I was interested in knowing that he scored an IQ of 132 and the principal of the school indicated that he was far too mature for a junior high school student."

After hearing other matters, the District Judge inquired *in extenso* of the defendant as to his comprehension of his plea of guilty and its possible consequences. After this, he sentenced the defendant to 15-years imprisonment. Surely this was, beyond cavil, a finding —indeed a pronouncement—that he was not entitled to FYCA treatment. The judge's statement in the later § 2255 opinion obviously was referring to a *formal* finding.

It would, indeed, be captious to reverse this case under either Act for lack of formalism. If the punishment laid upon Earl French Cox, Jr. be thought excessive, that would not dictate recourse to either the Juvenile Delinquency Act or the Federal Youth Corrections Act. The judgment of the District Court should be affirmed.