[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO DISMISS I AND MOTION TODISMISS II
The defendant's, Jose C., who was fourteen years old at the time of his arrest in this case, seeks dismissal of the charges against him as well as the transfer of his case to the juvenile session of the superior court.[1] Jose C. claims that the statute that mandated the automatic transfer of his case to the adult criminal docket is unconstitutional. Specifically, he asserts that Public Act 95-225 § 13(a) violates both the Connecticut and United States Constitutions because (1) the automatic transfer provisions of the law do not comport with the requirements of due process; (2) the law gives the prosecutor discretion to return a case to the juvenile session thereby violating due process and the constitutionally required separation of powers; and (3) the law violates the equal protection provisions in that similar defendants are treated unequally as a result of unchecked prosecutorial discretion. Jose C. also claims that his social and psychiatric needs can be better addressed in the juvenile session of the superior court. He urges the court to find that it has discretion to send his case back to juvenile court and to exercise such discretion accordingly.
An evidentiary hearing was held on motions on January 5, 1996. Thereafter, oral argument was heard on February 22, 1996 and March 14, 1996. For the reasons set forth below, the motions; to dismiss are denied. CT Page 2761
FACTS
On October 29, 1995 at approximately 6:17 p.m. two persons were walking in New Haven near Morse College, Yale University, when they were confronted by three subjects. One of the subjects wore a monster mask. The three subjects surrounded one of the victims and demanded money. The victim told the three that he had no money. When the victim tried to walk through the Morse gate, one of the subjects leaned against him stating, "You feel this, this is a gun." The subjects began to search the victim for money by reaching into his pockets. When the victim tried to enter the college he was restrained. Ultimately, the victim broke free, ran through the gate and called the police.
A short while later at approximately 6:41 p.m., another person was walking near the Yale Co-Op in New Haven when confronted by three males one of whom was wearing a monster mask. The three demanded money from the victim and when he tried to walk away they surrounded him. One of the three said "we have a gun . . . give me your money." The victim then handed over seventeen dollars. The three then fled the area. The victim made an immediate complaint to the police.
The police searched the area and noticed that Jose C. and two others matched the description given in both incidents. The three were detained and later positively identified by the victims. Seventeen dollars was found in Jose C.'s coat pocket. Jose C. was arrested and charged with two counts of Robbery first degree in violation of General Statutes § 53a-134 and two counts of Conspiracy to commit Robbery first degree in violation of General Statutes § 53a-48 and § 53a-134.
The next day, October 30, 1995, Jose C. appeared in the superior court, juvenile session. His case was automatically transferred to the adult docket. Thereafter, also on October 30, 1995, Jose C. was arraigned on the adult docket of the superior court, G.A. 6. The arraignment judge, after reviewing sworn police reports, made a finding of probable cause to support the charges.
THE STATUTE
In 1995, the Connecticut General Assembly passed Public Act 95-225 which made major changes in Connecticut's juvenile justice system. With respect to juvenile transfers, the legislature CT Page 2762 repealed § 46b-127 of the Connecticut General Statutes, and in its place, directed the following:
 The court shall automatically transfer from the docket for juvenile matters to the regular criminal docket of the superior court the case of any child charged with the commission of a capital felony, a class A or felony or a violation of Section 53a-54d, provided such offense was committed after the child attained the age of fourteen years. The child shall be arraigned in the regular criminal docket of the superior court at the next court date following such transfer. The file of any case so transferred shall remain sealed until the tenth day following such arraignment unless the state's attorney has filed a motion pursuant to this subsection in which case such file shall remain sealed until the court makes a decision on the motion. A state's attorney may, not later than ten working days after such arraignment, file a motion to transfer the case of any child charged with the commission of a class B felony to the docket for juvenile matters for disposition in accordance with the provisions of this chapter. The court sitting for the regular criminal docket shall, after hearing and not later than ten working days after the filing of such motion, decide such motion.
Public Act 95-225 § 13(a).
As discussed above, Jose C.'s case was automatically transferred to the regular criminal docket because he was charged with four class B felony offenses. The state's attorney did not file a motion to transfer his case to the juvenile docket. Jose C. now challenges the legality of his transfer.
Consideration of his claims requires some brief discussion of the historical development of juvenile justice.
HISTORY
CT Page 2763
Under ancient Saxon law criminal responsibility began at age twelve with regard to capital crimes. From the time of Edward III, however, the common law divided juveniles into three groups for purposes of criminal responsibility. An infant under seven could not be guilty of a felony. Between the ages of seven and fourteen, a child was deemed prima facie to be incapable of exercising felonious discretion, but this presumption was rebuttable and a court might find that such an individual was responsible for his acts. Blackstone reports that many children between the ages of seven and fourteen were executed for various crimes. Above the age of fourteen a person was deemed fully responsible for felonious conduct. See 4 Blackstone, Commentarieson the Laws of England, 23-24 (1769); 3 Coke, Institute of theLaws of England, 571 (Thomas ed. 1826); La Fave Scott, CriminalLaw § 46 at 351 (1972). Prior to the establishment of its juvenile justice system in 1921, Connecticut applied these common law principles to the criminal prosecution of children. In ReTyvonne M., 211 Conn. 151, 156 (1988); State v. Elbert, 115 Conn. 589,593 (1932); 2 Z. Swift, Digest p. 361.
"The concept of juvenile delinquency did not exist at common law." In Re Tyvonne M., supra, 211 Conn. 157. In the early part of this century, states began to enact legislation that rendered children under a certain age delinquent for committing acts that, if committed by an adult, would be criminal. Id.; In re Gault,387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). Connecticut statutorily established a juvenile justice system in 1921. See Public Acts 1921, c. 336, 1. The statute was deemed an exercise by the state of its power over the welfare of its children. Cinguev. Boyd, 99 Conn. 70, 87 (1923).
Public Act 95-225, while retaining many of the clinical and rehabilitative purposes historically associated with juvenile justice, represents a clear break from previous statutory treatment of juveniles by reintroducing certain features of the common law. Foremost among these features is the mandatory transfer of children age fourteen and over who are charged with class A and B felonies. The legislative intent, as set forth in section 1 of Public Act 95-225, reflects the mixed objectives of the juvenile justice system. On the one hand, the statute seeks to provide care and treatment for juveniles who violate the law. On the other hand, it seeks to hold juveniles accountable for their conduct in order to protect the public safety. See Public Act 95-225 § 1(1), (3). It is evident that the legislature believed that certain criminal conduct posed such a risk to CT Page 2764 public safety that it was necessary to adjudicate such cases in the regular criminal sessions of the superior court.
Jose C. does not challenge the legislature's authority to fashion public policy in the area of juvenile justice. He does challenge the way in which the legislature went about accomplishing its policy objectives asserting that Public Act 95-225 § 13(a) does not meet constitutional requirements.
CONSTITUTIONALITY
In State v. Anonymous, 173 Conn. 414 (1977), the Connecticut Supreme Court considered whether a juvenile charged with murder whose case had been transferred to the superior court was entitled to the privacy protections associated with juvenile proceedings. In holding that such protections did not apply, the Court observed:
 Any privacy accorded to a juvenile because of his age with respect to proceedings relative to a criminal offense results from statutory authority, rather than from any inherent or constitutional right. Such statutory right to privacy reflects a legislative policy to the effect that juveniles should be treated in a manner different from that of other criminal offenders. Because the right to anonymity emanates from the legislature and does not involve any fundamental right, that right can be withdrawn or limited to certain classes of juvenile offenders by the legislature provided that the classifications are founded upon a rational basis.
State v. Anonymous, supra, 173 Conn. 417-18.
This holding is in accord with the well accepted notion that there is no constitutional right to be tried as a juvenile. Inre Juvenile Appeal. (84-2), 1 Conn. App. 378, 383 (1984); UnitedStates v. Quinnones, 516 F.2d 1309 (1st Cir. 1975), cert. denied423 U.S. 852 (1975); Cox v. United States, 473 F.2d 334 (4th Cir. 1973), cert. denied, 414 U.S. 869 (1973); Woodward v. Wainwright,556 F.2d 781 (5th Cir. 1977), cert. denied 434 U.S. 1088 (1978);Russell v. Parratt, 543 F.2d 1214 (8th Cir. 1976); United Statesv. Hayes, 590 F.2d 309 (9th Cir. 1979); United States v. Bland, CT Page 2765422 F.2d 1329 (D.C. Cir. 1972), cert. denied, 412 U.S. 909
(1973); Bailey v. State, 269 Ark. 397, 601 S.W.2d 843 (1980);People v. Thorpe, 641 P.2d 935 (Colo. 1982); Johnson v. State,314 So.2d 573 (Fla. 1975); State v. Purdy, 228 Kan. 264, 615 P.2d 131
(1980); People v. Sprinkle, 56 Ill.2d 257, 307 N.E.2d 161
(1974), cert. denied 417 U.S. 935 (1974); State v. Doe, 91 N.M. 506,576 P.2d 1137 (1978); Vega v. Bell, 47 N.Y.2d 543,419 N.Y.S.2d 454, 393 N.E.2d 450 (1979); State v. Grayer, 191 Neb. 523,215 N.W.2d 859 (1974); Jones v. State, 654 P.2d 1080
(Okla.Crim.App. 1982); State in the Interest of Atcheson, 575 P.2d 181
(Utah 1978); State v. Hodges, 28 Wash. App. 902, 626 P.2d 1025
(1981); Hansen v. State, 904 P.2d 811, 818 (Wyo. 1995).
In considering the various constitutional attacks brought against Public Act 95-225 § 13(a), it is important to bear in mind that, as stated above, the entire array of special treatments accorded to juvenile offenders are, at their root, a matter of legislative grace.
STANDARD OF REVIEW
The standard applicable to constitutional attacks against a statute is rigorous and well established. When the constitutionality of a statute is raised, our courts will presume a statute's validity and sustain it unless it clearly violates constitutional principles. State v. Aspinall, 6 Conn. App. 546,550 (1986). It is presumed that the legislature intended to enact an effective and constitutional statute. Murray v. Lopes,205 Conn. 27, 36 (1987). One who contests the constitutionality of a statute bears the heavy burden of demonstrating beyond a reasonable doubt that the presumption of its validity has been overcome. State v. Zach, 198 Conn. 168, 177-78 (1985); accordState v. Ralph M., 211 Conn. 289, 318 (1989).
It is clear, based on the above, that the law accords a presumption of constitutional validity to Public Act 95-225 § 13(a). Moreover, that presumption can only be overcome if the defendant's claims establish — beyond a reasonable doubt — that the statute is constitutionally defective.
FEDERAL CONSTITUTION[2]
A. DUE PROCESS
Jose C.'s due process claim is straightforward. He asserts CT Page 2766 that the automatic transfer provisions of Public Act 95-225 § 13(a) violate the dictates of Kent v. United States, 383 U.S. 541
(1966) in that they do not provide for any due process hearing prior to the transfer of a case to the adult docket. The defendant correctly states that Connecticut has followed Kent in evaluating previous juvenile transfer statutes. See In re RalphM., 211 Conn. 289, 302 (1989) (prior transfer provisions of §46b-127(a) while not requiring compliance with strict rules of evidence, still complied with due process requirements of Kent).
In Kent, the United States Supreme Court reviewed a transfer based upon a statute that authorized a judge "after full investigation" to waive jurisdiction and order a child held for trial as an adult. Id., 547-48. The Court found that the defendant in Kent was transferred to adult court without any hearing, without any opportunity to be heard himself or through his parents or counsel, and without any statement of reasons supporting the transfer. Id., 546. This procedure was found to be in violation of the juvenile transfer statute and the requirements of due process. Id., 554.
While Kent stressed that a juvenile court's determination to relinquish jurisdiction was a "critically important proceeding" requiring a hearing prior to the transfer order, it did not mandate what type of hearing was required other than it must measure up to the essentials of due process and fair treatment.Kent v. United States, supra, 383 U.S. 560-61.
There is no question that Public Act 95-225 § 13(a) does not provide for any hearing prior to the transfer of fourteen and fifteen year old juveniles charged with class A or B felonies. Once so charged, these juveniles are automatically transferred by operation of law to the adult docket. The juvenile session judge has no discretion to keep the case. As-promulgated, the statute does not contain any Kent type due process as part of the transfer scheme. The question is whether Kent applies at all.
Five federal circuits have considered challenges to the prosecution of a juvenile as an adult grounded on a claim that the statutes involved did not provide for a Kent hearing. All five have distinguished Kent. In United States v. Bland,472 F.2d 1329 (D.C. Cir. 1972), the defendant challenged his prosecution as an adult under a District of Columbia statute that excluded from the definition of "child" persons sixteen or older charged with certain enumerated offenses. The defendant alleged, CT Page 2767 and the district court agreed, that procedural due process required a hearing before he could be prosecuted as an adult. Id., 1331. The D.C. Circuit reversed, holding that the charging decision of the United State's Attorney "operates automatically to exclude the individual from the jurisdiction of the Family Division" and no hearing was required. Id., 1336 n. 26. The court in Bland specifically distinguished Kent on the basis that it involved the "full investigation" requirement of the prior provision of the District of Columbia Code. That statute required that individual judgments be made as to whether juvenile court jurisdiction should be waived. Id. The court noted that the revised statute never gave juvenile jurisdiction in the first place so that Kent considerations were inapplicable. Id.
Later federal cases followed Bland in upholding a federal statute that authorized the Attorney General to charge certain juveniles as adults without any prior due process hearing. Coxv. United States, 473 F.2d 334 (4th Cir.), cert. denied, 414 U.S. 869
(1973); United States v. Quinnones, 516 F.2d 1309 (1st Cir.),cert. denied, 423 U.S. 852 (1975). In Cox, the Fourth Circuit observed that "when the question is one of waiver of jurisdiction of a juvenile court and it is to be decided by a judge of the juvenile court, it is clear that the juvenile is entitled to a hearing on the question of waiver and the assistance of counsel at the hearing." Cox v. United States, supra, 473 F.2d 335. The court went on to note that such Kent requirements did not apply when the adult adjudication flowed directly from the prosecutor's charging decision. Id.; accord Russell v. Parratt, 543 F.2d 1214,1216 (8th Cir. 1976).
In Woodard v. Wainwright, 556 F.2d 781 (1977), the Fifth Circuit in a habeas corpus petition reviewed a Florida statute that mandated that "a child of any age charged with a violation of Florida law punishable by death or life imprisonment shall be tried as an adult if an indictment on such charge is returned by a grand jury." Id., 783. The petitioner claimed that the automatic waiver of juvenile jurisdiction resulting from an indictment violated the due process standards mandated by Kent. The court in Woodward distinguished Kent on the basis that it concerned a statutory duty by a juvenile court judge to investigate and hear matters relevant to the waiver of juvenile jurisdiction, whereas the Florida statute concerned the prosecutor's discretionary act to present his case to a grand jury. Id., 784. Woodward ultimately held that the Florida statutory scheme that automatically divested the juvenile court CT Page 2768 of jurisdiction based on the indicted charge was not unconstitutional for failure to require a due process hearing prior to the juvenile being prosecuted as an adult. Id., 787.
Numerous states have also distinguished Kent and upheld juvenile statutes that mandate adult prosecution of juveniles based on the charge alleged. See Vega v. Bell, 419 N.Y.S.2d 454,459 (1979) (New York statute that required that all youngsters over a certain age accused of certain crimes be automatically prosecuted as adults, subject to transfer back to Family Court, was not defective for failure to provide a Kent type hearing);People v. P.H., 582 N.E.2d 700, 712 (Ill. 1991) (Illinois "gang transfer" statute not defective for lack of Kent hearing because once statutory criteria were met the juvenile court was mandated to transfer case to adult court and had no discretion to do otherwise); Matter of Wood, 768 P.2d 1370, 1372-73 (Mont. 1989) (no due process defect in Montana statute that mandates transfer of sixteen year olds charged with homicide to district court without any Kent type hearing); State v. Berard, 401 A.2d 448,451 (R.I. 1979) (Rhode Island statute that excluded from Family Court jurisdiction certain juveniles based on their charges and record was not unconstitutional for failure to provide due process hearing); People v. Thorpe, 641 P.2d 935, 939 (Colo. 1982) (lack of hearing not a due process defect in Colorado statute that allowed district attorney to charge certain violent juvenile offenders as adults); State v. Perigue, 439 So.2d 1060,1064 (La. 1983) (Louisiana statute that automatically divested juvenile court of jurisdiction for sixteen year olds charged with armed robbery was not defective due to the lack of a due process hearing.)
Although many of the above cases involve statutory schemes that are arguably distinguishable from Connecticut Public Act 95-225, the basis on which they all distinguish Kent is consistent, that is where the adult prosecution of a juvenile is mandated by the application of statutory criteria, no due process hearing is constitutionally required. The evil that Kent sought to prevent — the arbitrary transfer of juveniles to the adult system — is absent in a statutory scheme that mandates adult treatment. Vegav. Bell, supra, 419 N.Y.S.2d 459.
Public Act 95-225 § 13(a) likewise mandates that all juveniles fourteen and older charged with class A and B felonies must automatically be adjudicated on the adult criminal docket. The statute does not provide for any judicial discretion to be CT Page 2769 applied other than to ascertain that the statutory criteria are met. Accordingly, the court finds that no Kent type due process hearing is required.
As part of his due process attack, Jose C. also claims that Public Act 95-225 § 13(a) does not, by its terms, require a probable cause finding to be made in connection with the automatic transfer. The statute does require that the child "shall be arraigned in the regular criminal docket of the next court date following [the] transfer." In this case, as in most cases, such arraignment included a judicial review of sworn police reports to determine if probable cause existed to support the arrest. See Connecticut Practice Book § 650. If a court did not find probable cause to support a class A or B felony charge, it would have the authority to dismiss the adult charge. See General Statutes § 54-56 (court has authority dismiss any criminal charge if there is insufficient evidence to justify bringing or continuing such information). Section 54-56 would also provide a defendant with a means of raising a claim of lack of evidence to support a class A or B felony charge if no probable cause review was conducted by the arraignment court.[3] This challenge would have to be made during the ten day sealing period provided for in the statute.
When read in conjunction with § 54-56, Public Act 95-225 § 13(a) does provide a means through which a defendant can obtain judicial review of the prosecutor's charging decision. In reJuvenile Appeal (83-CD), 189 Conn. 276, 288-89 (1983) (it is permissible to consider statutes on a particular subject as a whole in order to render a reasonable and constitutional interpretation); see generally E. Peters, Common Law Judging in AStatutory World, 43 U. Pitt. L. Rev. 995 (1982).
In this case, the arraignment judge after reviewing sworn police reports found probable cause to support the robbery charges.
Jose C. also claims that Public Act — 95-225 § 13(a) violates the requirements of due process because only the prosecutor may move to transfer a case back to the juvenile docket. The statute does not provide a defendant with any means to request the return of a case to juvenile docket after an automatic transfer. The defendant asserts that the failure of the statute to provide for such relief coupled with the lack of statutory standards to guide the exercise of prosecutorial discretion, violates due process. CT Page 2770 The state responds that this due process claim is unpersuasive because (1) the defendant has not identified a protected liberty interest requiring due process and (2) the exercise of prosecutorial discretion contemplated by the statute is well within constitutional limits.
The identification of a protected liberty interest and the analysis of what procedural protections are required for such interest are at the heart of any due process claim. State v.Davis, 190 Conn. 327, 336-37 (1983). As discussed above, the protections of the juvenile justice system are not matters of right but rather are derived from of statutes. The defendant has not identified any right to petition a court to transfer his case back to the juvenile docket. Prior legislative enactments regarding juvenile transfer have not contained any transfer back provisions. See General Statutes § 46b-127.
The exercise of prosecutorial discretion regarding whether a case should be returned to the juvenile docket is not an area well-suited to judicial oversight. Massameno v. StatewideGrievance Committee, 234 Conn. 539, 575 (1995). Moreover, the statute's requirement that the state must proceed by motion to transfer a case back to the juvenile docket provides some measure of judicial review to assure that the state is exercising its discretion in a nondiscriminating manner.
The court does not find that the transfer back provision of Public Act 95-225 § 12(a) violates due process.
B. EQUAL PROTECTION
Jose C. claims that the statute is unconstitutional because it violates the equal protection clause of thefourteenth amendment to the United States Constitution. Specifically, the defendant asserts that the discretion vested in the prosecutor to move to transfer a case back to juvenile court creates two classes of defendants — those charged with class B felonies who are prosecuted as adults and those so charged who are transferred back to juvenile court. The defendant claims that the lack of statutory standards for the exercise of this prosecutorial discretion violates equal protection.
Since there is no constitutional right to treatment as a juvenile, the statutory classification should be reviewed using the so-called rational basis test. When legislation containing CT Page 2771 neither a suspect classification nor impinging on a fundamental right is challenged on equal protection grounds, the burden is on the complaining party to establish that the statutory distinction is without a rational basis. State v. Dupree, 196 Conn. 655, 664
(1985); Franklin v. Berger, 211 Conn. 591, 595 (1989); Miller v.Heffernam, 173 Conn. 506, 509 (1977), appeal dismissed, 434 U.S. 1057
(1978).
The defendant relies on two cases to support his equal protection argument. In Hughes v. State, 653 A.2d 241 (Del. 1994), the Delaware Supreme Court struck down as unconstitutional an amendment to its juvenile transfer law that automatically transferred to adults court juveniles law that automatically the pendency of their case. Id., 243. Delaware's normal transfer procedure required that children charged with the most serious felonies be prosecuted as adults and that other children over sixteen years old could be transferred to adult court if found not amenable to the Family Court process. Id., 244. Those found not amenable also had a right to petition the adult court to transfer the case back to Family Court. Id., 245. The amendment did away with the "amenability hearings's in both juvenile and adult courts for persons who were arrested while under eighteen but turned eighteen while their case was pending. Id. 247. The Delaware court held that this amendment was unconstitutional because it did not allow for any judicial review of the nature of the charge in violation of due process. Id., 252. The court also held that the amendment violated equal protection guarantees because it placed defendants at the "mercy of the call of the calendar" as to whether they would enjoy the benefits of Family Court or be prosecuted as adults. Id., 251. Such classification was deemed unconstitutionally arbitrary. Id.
The Connecticut statute is distinguishable from the Delaware law struck down in Hughes. First, the Delaware system gave exclusive jurisdiction over juvenile matters to their Family Court. Id., 243-44. In Connecticut, the question of whether a case is handled on the regular criminal docket as opposed to the juvenile docket concerns venue and not subject matter jurisdiction. State v. Kelly, 206 Conn. 323, 332 (1988). In addition since the Connecticut scheme automatically transfers children charged with class A and B felonies immediately after their arrest, the "mercy of the calendar" issues do not arise. Accordingly, the equal protection issues found problematic inHughes simply do not arise under the Connecticut scheme. CT Page 2772
It is true that the Delaware Supreme Court believed that due process required judicial review of the prosecutor's charging decision in order to guard against an unfounded felony charge that triggered a transfer. Id., 250. However, this view is contra to the weight of authority in the federal circuits and other states. See United States v. Bland, 472 F.2d 1329, 1337
(D.C. Cir. 1972) (Absent "suspect" factors such as race, religion or other arbitrary classification, the exercise of prosecutorial charging discretion does not involve a violation of due process or equal protection); Woodward v. Wainwright, 556 F.2d 781, 786
(5th Cir. 1977) (prosecutor may properly select juveniles he intends to seek indictments against even though the indicated charge may divest juvenile court of jurisdiction); People v.Thorpe, 641 P.2d 935 (Colo. 1982) (exercise of selectivity in the enforcement of laws is not in itself a constitutional violation of equal protection); State v. Berard, 401 A.2d 448, 451 (1979) (same); Hansen v. State, 904 P.2d 811, 818 (Wyo. 1995) (same).
The second case relied upon by the defendant is State v.Mohi, 901 P.2d 991 (Utah 1995). In Mohi, the Supreme Court of Utah held that a Utah statute permitting a prosecutor to charge an offender in either adult or juvenile court violated the Utah Constitution's equal protection clause. Id., 1006. That clause established different requirements than the federal constitution in that it required not only that a law be uniform on its face but that it operate uniformly as well. Id., 997. The court held that the exercise of prosecutorial discretion permitted by the statute could operate to charge some juveniles in adult court and leave others in juvenile court for the same offense. Id., 998. The court further found that the disparate treatment was not reasonably related to the purpose of the statute and therefore the statute violated the Utah constitution. Id., 999.
Mohi is also distinguishable from Connecticut's Public Act 95-225 § 13(a). Under Connecticut's law all juveniles charged with class A or B felonies must automatically be transferred to the adult docket. There is no prosecutorial discretion as to where the case is adjudicated. This mandatory aspect of the statute distinguishes it from the Utah scheme. Even the Mohi opinion acknowledges that if the prosecutorial discretion was eliminated the statute would be constitutional. Id., 1001. The court also cited to New York's transfer statute as an example of a law that was free from the unconstitutional discretion present in the Utah statute. Id., 1000 n. 11(4). The New York law requires certain juveniles to be tried as adults unless the CT Page 2773 district attorney requests that the case be handled in family court. N.Y. Crim. Proc. Law § 180.75 (McKinney 1993). This statute is conceptually the same as Public Act 95-225 § 13(a).
The equal protection issue comes down to whether the automatic transfer of juveniles charged with class A and B felonies to adult court furthers a legitimate governmental interest. There is clearly a legitimate governmental interest in protecting the public from serious juvenile crimes. The legislature's decision to further that interest by mandating the adult prosecution of class A and B felonies is reasonably related to the pursuit of that legitimate goal. In short, there exists a rational basis for the statutory classification and therefore it does not violate equal protection. The fact that the classification is affected by the prosecutors' charging discretion does not violate constitutional principles so long as the decision is not based on race, religion or other arbitrary classification. Bordenkircher v. Hayes, 434 U.S. 357, 364
(1978); Oyler v. Boles, 368 U.S. 448, 556 (1962); State v.Delossantos, 211 Conn. 258, 287-88 (1989).
C. SEPARATION OF POWERS
The defendant claims that Public Act 95-225 § 13(a) violates the constitutional mandate for separation of powers because it allows prosecutors to control the docketing of juvenile transfer cases.[4] In support of this assertion, the defendant relies onState v. Campbell, 224 Conn. 168 (1992). In Campbell, the Supreme Court rejected a separation of powers challenge to Connecticut's law allowing mentally ill defendants to serve their sentence at the Whiting Forensic Institute. Id., 176-81.
The Supreme Court rejected a similar challenge brought against the former § 46b-127 which required the mandatory transfer of class A felonies. In re Ralph M., supra, 211 Conn. 318. The Court found that the appellant's claim that § 46b-127
impermissibly infringed upon the inherent and exclusively judicial authority of the superior court to be without merit. Id. This decision is in accord with the generally accepted view that only those laws that attempt to exercise power which lies exclusively under the control of the courts violate the constitutional mandate. State v. Darden, 171 Conn. 677, 679
(1976).
Other states that have considered this issue have rejected CT Page 2774 separation of powers claims reasoning that since treatment as a juvenile is a creation of the legislature, modification and restriction of such treatment are within their purview as well. People v. J.S., 469 N.E.2d 1090, 1096 (Ill. 1984); Matter ofWood, 768 P.2d 1370, 1376 (Mont. 1989); Hansen v. State, 904 P.2d 811,819 (Wyo. 1995).
Given the above authority, the court does not find that Public Act 95-225 § 13(a) unconstitutionally infringes on the power of the superior court.
CONNECTICUT CONSTITUTION
The fact that Public Act 95-225 § 13(a) passes federal constitutional muster does not necessarily mean that it meets the requirement of the Connecticut Constitution. Our state constitution has been interpreted to afford Connecticut citizens "broader protection of certain personal rights than that afforded by similar or even identical provisions of the federal constitution." State v. Dukes, 209 Conn. 98, 112 (1988).
In State v. Geisler, 222 Conn. 672, 684-85 (1992), our Supreme Court articulated a six part test for use in analyzing state constitutional claims. The components of this analysis are: (1) the textual approach; (2) holdings and dicta of Supreme Court and Appellate Court cases; (3) federal precedent; (5) sister state decisions; (5) historical approach; and (6) economic/sociological considerations. Each of these will be discussed briefly.
There is nothing specifically in the text of either the due process or equal protection clauses of the Connecticut Constitution that gives specific guidance as to whether in this area of juvenile justice Connecticut provides more rights to individuals than the federal constitution.[5] As stated above, the fact that these clauses are similar in text to their federal counterparts does not preclude the clauses from providing more rights to Connecticut citizens. See State v. Dukes, supra,209 Conn. 112.
Connecticut courts have not considered the constitutionality of Public Act 95-225. While the prior juvenile transfer statute has been upheld; see In re Ralph M., supra, 211 Conn. 318; that statute involved a far different approach than Public Act 95-225 § 13(a). Whether the current scheme meets state constitutional CT Page 2775 requirements is an issue of first impression.
Federal precedent is mixed. While the defense argues thatKent v. United States, 383 U.S. 541 (1966) requires a due process hearing, all of the federal circuits that have considered the issue have distinguished Kent where adult prosecution of juveniles is mandatory.
Sister state decisions are also mixed. The defense relies upon the Utah and Delaware cases discussed above where juvenile transfer statutes were struck down. This court has found the reasoning of those decisions distinguishable when applied to the Connecticut statute. As discussed above, the weight of authority from other states has upheld the constitutionality of similar statutes.
At the time of the adoption of its 1818 Constitution, Connecticut followed the common law and treated fourteen and fifteen year olds as adults when charged with a felony offense. It was not until 1921 that Connecticut established by statute a juvenile justice system. Therefore, there appears to be no historical support for expanded juvenile rights under the Connecticut Constitution.
The economic and sociological considerations likewise present a mixed picture. The legislature was obviously concerned with protecting society from what it viewed as serious juvenile offenders whose treatment in juvenile court was deemed inadequate to protect the public. To be sure, there are incidents that have received wide publicity that would support that view.[6] In addition, statistics from the National Council on Crime and Delinquency in San Francisco show that in 1987 the number of violent crimes by teenagers per 100,000 arrests was 600. By 1993, the last complete survey, the figure was 900. According to the Federal Bureau of Investigation statistics on crime demographics these numbers could continue to increase since there are currently forty million children in the United States under the age of ten.
On the other hand, the "automatic" transfer of juveniles to adult court has a societal cost in that the traditional resources of the juvenile justice system are not available to the child.[7]
Jose C. has presented evidence claiming that his special social and psychological needs will be better met in juvenile court. By making the transfer automatic, the legislature has chosen not to CT Page 2776 allow courts the discretion to consider such claims.
In sum, the state constitutional analysis presents conflicting authority on the pertinent Geisler points. Two facts however militate in favor of the constitutionality of Public Act 95-225 § 13(a). First is the presumption of constitutionality discussed above that applies to all statutes. Second is the fundamental fact that special treatment for juveniles draws its roots not from the constitution but rather from legislative action. These facts, taken together with the federal and state cases discussed above that have upheld functionally similar statutes, persuades the court that Public Act 95-225 § 13(a) comports with the Connecticut Constitution.
CONCLUSION
For the reasons discussed above, the defendant's Motion to Dismiss I and Motion to Dismiss II are denied.
Dated at New Haven, Connecticut this 21st day of March, 1996.
Robert J. Devlin, Jr., Judge