STATE of Utah, Plaintiff and Appellee,

v.

Asipeli MOHI, Defendant and Appellant.

STATE of Utah, Plaintiff and Appellee,

v.

Phillip Daniel LUNDQUIST, Defendant and Appellant.

STATE of Utah, Plaintiff and Appellee,

v.

Daniel Rodrigo CHAIDES, Defendant and Appellant.

Nos. 940028, 940200 and 940201.

Supreme Court of Utah.

June 15, 1995.

Rehearing Denied Sept. 14, 1995.

Jan Graham, Atty. Gen., Carol Clawson, Julie George, J. Kevin Murphy, Asst. Attys. Gen., Salt Lake City, for plaintiff.

Ronald J. Yengich, Hakeem Ishola, Salt Lake City, for Mohi.

Linda Anderson, Provo, for Lundquist.

Thomas H. Means, Provo, and Lee C. Rasmussen, Salt Lake City, for Chaides.

DURHAM, Justice:

This case is a consolidation of appeals of defendants Asipeli Mohi, Phillip Daniel Lundquist, and Daniel Rodrigo Chaides from interlocutory orders of the Third Judicial District and Fourth Judicial Circuit Courts. Defendants challenge the constitutionality of portions of Utah's Juvenile Courts Act (the Act).[1] In all three cases, the trial courts

---

1. Section 78–3a–25 was amended after Mohi was charged but before Lundquist and Chaides were

below denied defendants' motions that the trial courts rule portions of the Act unconstitutional. Defendants ask this court to reverse the trial courts' findings and hold unconstitutional the portions of the Act that allow prosecutors discretion to file some charges against juveniles directly in adult circuit or district court while leaving other similarly accused offenders in juvenile court. *See* Utah Code Ann. § 78–3a–25.

## FACTS

### Asipeli Mohi

The State alleges that on September 1, 1993, Asipeli Mohi (Mohi) intentionally or recklessly caused the death of Aaron Chapman with a firearm or facsimile thereof. Several witnesses have identified Mohi as the person who shot Chapman. A criminal information was filed against Mohi on September 8, 1993, pursuant to the direct-file provisions of Utah Code Ann. § 78–3a–25(6)(b). Mohi was born on January 3, 1976, and was thus approximately seventeen years and eight months of age at the time of the alleged crime, four months short of the age of majority.

Mohi has been represented by counsel since being charged. The direct-file statute under which Mohi was charged provided that when an information was filed in district or circuit court against a juvenile, the defendant or his or her guardian or representative could file a "recall motion" with the juvenile court within ten days of the original filing. *See* Utah Code Ann. § 78–3a–25(10). Neither Mohi nor his counsel filed a recall motion.

Mohi was bound over to stand trial in district court. In November and December of 1993, Mohi filed amended motions and supporting memoranda asking the court to rule the direct-file provision of Utah Code Ann. § 78–3a–25 unconstitutional pursuant to article I, sections 7 (due process) and 24 (uniform operation of laws) of the Utah Constitution. In January 1994, Judge Iwasaki

entered findings of fact and conclusions of law upholding the constitutionality of the direct-file statutes. This court granted Mohi's petition for an interlocutory appeal from that order.

### Phillip Daniel Lundquist and Daniel Rodrigo Chaides

Phillip Daniel Lundquist (Lundquist) and Daniel Rodrigo Chaides (Chaides) were jointly charged by criminal information, filed March 17, 1994, with one count each of aggravated burglary, a first degree felony; aggravated robbery, a first degree felony; and theft of a vehicle, a second degree felony. Lundquist alone was charged with a fourth count, theft of a firearm, a second degree felony. The information noted the State's intent to seek penalty enhancement on each of the aggravated burglary and aggravated robbery charges for use of a firearm or a facsimile of a firearm.

Lundquist and Chaides were initially held at a juvenile detention center. However, following a bond hearing in Fourth Judicial Circuit Court, both defendants were sent to the Utah County Jail rather than to the juvenile facility to await trial. On March 24, 1994, the circuit court heard arguments regarding the appropriate housing facility for juveniles charged as adults. After this hearing, defendants were returned to the Utah County Jail for further detention.

Lundquist and Chaides bring this appeal to challenge first the constitutionality of the amended direct-file statute and second the order placing them in the county jail rather than in a juvenile detention center. The direct-file provision used to charge Lundquist and Chaides differs from the earlier version of the statute used to charge Mohi in that the amended statute did not, in this instance, allow for a recall hearing regarding the propriety of adult jurisdiction. Lundquist and Chaides raise the same claims regarding the Act as Mohi does, with additional arguments that the amended statute deprives them of due process under both the state and

charged. This section was further amended during the 1995 legislative session. To clarify which version is being addressed, we will refer to the 1994 version of the statute as the amended ver-

sion. However, we stress that our decision today addresses the Juvenile Courts Act in use when these defendants were arrested. We do not treat the subsequent amendments.

federal constitutions by eliminating the chance for recall and that section 78–3a–25 violates the state constitutional provision requiring separation of powers. *See* Utah Const. art. V, § 1. Lundquist and Chaides also argue that the statute relied upon by the trial court to house them in the county jail rather than in juvenile detention while awaiting trial, Utah Code Ann. § 78–3a–30(9), is unconstitutionally vague for failing to clarify when it is proper for juveniles to be housed with adults.

## ANALYSIS

### I. Standard of Review

 All issues in this case present questions of law. We therefore review the trial courts' conclusions for correctness. *Erickson v. Schenkers Int'l Forwarders, Inc.,* 882 P.2d 1147, 1148 (Utah 1994); *State v. Pena,* 869 P.2d 932, 936 (Utah 1994); *State v. Thurman,* 846 P.2d 1256, 1269–70 (Utah 1993). While ruling on the constitutionality of a statute, we will resolve doubts in favor of constitutionality. *Society of Separationists, Inc. v. Whitehead,* 870 P.2d 916, 920 (Utah 1993).

### II. Uniform Operation of Laws

Defendants attack the direct-file provision of the Act under article I, section 24 of the Utah Constitution, which states, "All laws of a general nature shall have uniform operation." Utah Const. art. I, § 24. Defendants contend that section 78–3a–25 of the Code violates this provision by creating a scheme that treats one class of persons charged with a particular crime differently than another class of persons charged with the same crime. Defendants define the different "classes" created by the statute as (1) those accused of serious felony offenses who remain subject to the jurisdiction of the juvenile court and (2) those accused of identical offenses against whom the prosecutor files a criminal information in circuit or district court, or against whom a prosecutor obtains a criminal indictment. This arbitrary classification scheme is not reasonably related to any state interest, defendants argue, because the legislation is devoid of any reason for permitting identically situated juveniles to receive disparate treatment, resulting in one group that is eligible for rehabilitation in the juvenile system and another that faces the very different circumstances of the adult system. Defendants argue that no state interest is served by allowing such unreasonable disparity.

The State responds to these arguments first by claiming that defendants have not proven that the statute is applied in an uneven-handed way. Because the statute does not, according to the State, on its face create unreasonable classifications, defendants should have the burden of showing that the State actually afforded specific, like-situated juveniles different, more favorable treatment than that accorded these defendants. Because no such evidence was produced, the State contends, defendants' challenge must fail. Furthermore, the State claims that contrary to defendants' contentions, this court in *State v. Bell,* 785 P.2d 390 (Utah 1989), already decided that the direct-file statute does not violate either the federal or state constitution.

We begin by clarifying the level of scrutiny used in deciding the constitutionality of the statutes in question under the state constitution. Defendants contend that the statute touches and concerns a "liberty" interest and therefore the legislature's actions must be reasonable in relation to the state's need to enact such statutes. The State contends, however, that being tried as a juvenile is not a constitutional right and therefore the legislature's actions in adopting the ordinance must be only rationally related to the state's interest in preserving the peace.

 In *State in re Clatterbuck,* 700 P.2d 1076, 1079 (Utah 1985), we held that a juvenile's interest in his or her trial forum touched and concerned a "critical" interest. "We agree that whether a juvenile is to be transferred to the adult system is a 'critically important' question and that a juvenile must be afforded appropriate procedural protections when that determination is made." *Id.* (quoting *Kent v. United States,* 383 U.S. 541, 553, 86 S.Ct. 1045, 1053, 16 L.Ed.2d 84

(1966)).[2] In *Blue Cross & Blue Shield v. State*, 779 P.2d 634, 637 (Utah 1989), we discussed at some length the level of scrutiny applied to legislation challenged under article I, section 24. There we held, "In scrutinizing a legislative measure under article I, § 24, we must determine whether the classification is *reasonable*, whether the objectives of the legislative action are legitimate, and whether there is a *reasonable relationship* between the classification and the legislative purposes." *Id.* (emphasis added) (citations omitted); *accord Mountain Fuel Supply Co. v. Salt Lake City Corp.*, 752 P.2d 884, 890 (Utah 1988); *Malan v. Lewis*, 693 P.2d 661, 671 (Utah 1984); *see also Lee v. Gaufin*, 867 P.2d 572, 577 (Utah 1993). The burden of demonstrating unconstitutionality, however, remains a heavy one. *Blue Cross*, 779 P.2d at 637; *City of West Jordan v. Utah State Retirement Bd.*, 767 P.2d 530, 537 (Utah 1988). Therefore, we will uphold the statute unless defendants demonstrate that the state's interest in protecting the public and addressing the needs of juveniles is not reasonably related to the state's course of action in passing the statutory provisions in question.[3]

■ Related questions were treated by this court in *Bell*. The State argues that *Bell* resolved the issues that are now before us. Defendants argue, on the other hand, that *Bell* spoke only to claims under the federal Equal Protection Clause and that their claims under article I, section 24 of the Utah Constitution have yet to be addressed. We agree with defendants that *Bell* did not fully resolve all issues now before the court.

*Bell* involved a juvenile convicted of aggravated robbery and attempted second degree murder. In part I of that opinion, a majority of this court set aside the defendant's conviction of attempted second degree murder under the felony murder provision of the statute. In parts II and III of the *Bell* opinion, a constitutional challenge to section 78–3a–25 of the Code was discussed. It is critical to note, however, that these sections of the lead opinion in *Bell* failed to carry a majority of the court. *Id.* at 407 (Howe, Assoc. C.J., concurring; Stewart, J., concurring in the result; Durham & Zimmerman, JJ., dissenting). Therefore, those sections of the lead opinion discussing the direct-file provision of the Utah Juvenile Courts Act do not constitute binding precedent. Moreover, *Bell* analyzed the direct-file provisions only under the federal Equal Protection Clause. *Id.* at 395 n. 23. Thus, the state constitutional questions now raised by defendants have not yet been addressed by this court.[4]

---

**2.** *Kent*, the case upon which *Clatterbuck* is based, goes on to state:

> [T]here is no place in our system of law for reaching a result of such tremendous consequences [trying juveniles as adults] without ceremony—without a hearing, without effective assistance of counsel, without a statement of reason. It is inconceivable that a court of justice dealing with adults would proceed in this manner. It would be extraordinary if society's special concern for children ... permitted this procedure. We hold that it does not.

*Kent*, 383 U.S. at 554, 86 S.Ct. at 1053–54. This language clearly states that the law protects the procedural rights of juveniles. Yet the dissenters would uphold a system which allows prosecutors to make this determination "without ceremony—without a hearing, ... without a statement of reason." *Id.* That position is not supported by precedent.

**3.** The dissent correctly notes that the burden of overturning legislation on grounds of constitutionality is "a heavy one." However, the dissent goes on to state that this normally "heavy" burden is "particularly heavy in the present case because the statute at issue is a later version of the one addressed in *State v. Bell*, 785 P.2d 390, 405 (Utah 1989), in which this court held that the substantially similar prior version of the statute was constitutional under the fourteenth amendment to the United States Constitution." The dissent's attempt to escalate defendants' burden of proof is inappropriate.

First, as noted above, *Bell* is a plurality opinion; it does not establish precedent. Second, *Bell* addressed only the federal constitution. It made no "holdings," whether by a majority of the court or otherwise, regarding the state constitutional issues raised today. Finally, an amended version of a statute previously ruled upon is not subject to any type of deference from this court, because it may in fact be the amendments which render the statute troublesome. Therefore, the claims brought today against the amended statute under the state constitution are not affected by *Bell*. While defendants' burden is indeed "heavy," it is not made more so by the existence of a plurality opinion based on different legal theories but arising from similar facts.

**4.** Somewhat confusingly, the lead opinion in *Bell* specified that "we treat [Bell's] claims as based only upon federal constitutional provisions," 785

■ We begin by addressing the contours of article I, section 24 of the Utah Constitution. We most recently discussed this provision in *Lee:*

> Although this provision is sometimes thought to have the same effect and impose the same legal standards on legislative action as the equal protection guarantee found in the Fourteenth Amendment to the United States Constitution, the language and history of the two provisions are entirely different, and even though there are important areas of overlap in the concepts embodied in the two provisions, the differences can produce different legal consequences.

*Id.* at 577. Utah's uniform operation of laws provision establishes different requirements than does the federal Equal Protection Clause. The most important of these requirements, for the present analysis, is the requirement that "[f]or a law to be constitutional under [the provision], it is not enough that it be uniform on its face. What is critical is that the *operation* of the law be uniform. A law does not operate uniformly if 'persons similarly situated' are not 'treated similarly'...." *Id.* (quoting *Malan,* 693 P.2d at 669). Hence, the challenged direct-file statute will not survive constitutional challenge if it is found to treat similarly situated juveniles in an unreasonably different fashion.

■ Analysis under Utah's uniform operation of laws provision requires two assessments. "First, a law must apply equally to all persons within a class. Second, the statutory classifications and the different treatment given the classes must be based on differences that have a reasonable tendency to further the objectives of the statute." *Malan,* 693 P.2d at 670 (citations omitted); *accord Blue Cross,* 779 P.2d at 637. Therefore, we must first determine what classifications, if any, are created by the statute. Second, we must determine whether different classes or subclasses are treated disparately. Finally, if any disparate treatment exists between classes or subclasses, we must

determine whether the legislature had any reasonable objective that warrants the disparity. *Id.*

■ Defendants claim, as set out above, that section 78-3a-25 of the Utah Code establishes at least two classes of similarly situated juvenile offenders: (1) sixteen- to seventeen-year-old juveniles accused of capital or first degree felonies over whom the juvenile court retains jurisdiction for all purposes, and (2) sixteen- to seventeen-year-old juveniles accused of capital or first degree felonies against whom a criminal information is filed in district or circuit court and over whom the district or circuit court retains jurisdiction. The State responds that the classes complained of are not created until the prosecutor decides how to proceed on a particular case. Therefore, the State contends, the statute does not on its face contain a system of classification and any classes that result are created by the prosecutor, not the statute.

■ The State refers us to John E. Nowak et al., *Constitutional Law* 600 (1983) [hereinafter Nowak], for support of the argument that prosecutors, not the statute, "create" the challenged classes. Professor Nowak states that a statute creates a series of classes when "the law by its own terms classifies persons for different treatment." *Id.* The State argues that the statute is facially neutral because it does not "by its own terms" segregate juvenile offenders into the classes complained of. We disagree.

The amended statute plainly states that a certain class of juveniles will be treated in one way (remain in juvenile jurisdiction) while another class of like-accused juveniles will be treated in another (singled out by prosecutors to be tried as adults). *See* Utah Code Ann. § 78-3a-25(6)-(7). Although a prosecutor's decision triggers the assignment of any given defendant to one class or another, the statutory scheme itself contemplates the two classes. Even Professor Nowak's treatise, relied on by the State, clarifies that

P.2d at 395 n. 23, but later asserted that Bell's claims do not amount to a denial of equal protection under "either the federal or state constitution." *Id.* at 405. However, the text of the

opinion contains no discussion of the Utah Constitution, and the conclusion that the claims were invalid under the Utah Constitution was therefore mistaken.

such a statutory arrangement is considered a statutory classification for purposes of constitutional analysis. On the same page from which the State takes the language quoted above, Nowak goes on to state that a statute which does not on its face create classes may nonetheless result in classification during the actual application of the statute by those empowered to administer the law. Nowak, at 600. In sum, we conclude that section 78–3a–25 does create a system of classification. *See Bell*, 785 P.2d at 400–01 (plurality opinion) (discussing the classification system of Utah Code Ann. § 78–3a–25); *id.* at 408–09 (Durham & Zimmerman, JJ., dissenting) (discussing the classes contained in Utah Code Ann. § 78–3a–25).

We next consider whether the law in question "applies equally" to all members within each class or subclass. *Malan*, 693 P.2d at 670. Defendants contend that because they are being tried as adults for the same crimes that some of their peers will be tried for as juveniles, they are treated disparately. The State counters that being tried as a juvenile is not a "right" of anyone per se and that by bestowing a benefit on some juveniles but choosing not to bestow that same benefit on others, the legislature is not taking any rights away but merely giving benefits to appropriate persons. We are unable to reconcile this argument with the concept of uniform operation of laws because the selection process for beneficial treatment is arbitrary and standardless.

We agree with defendants that the present Act treats a certain subclass of juveniles nonuniformly. Juveniles against whom indictments or informations are filed are statutorily indistinguishable from those who remain in juvenile jurisdiction. By the very terms of the statute, they are accused of the same offenses and fall into the same age ranges. There is absolutely nothing in the statute to identify the juveniles to be tried as adults; it describes no distinctive characteristics to set them apart from juveniles in the other statutory class who remain in juvenile jurisdiction. However, there are critically important differences in the treatment of those juveniles tried as adults compared to those left in the juvenile system. For in-

stance, cases tried in the juvenile court are considered civil rather than criminal proceedings. Utah Code Ann. § 78–3a–44(1). This has significant ramifications for an individual's future criminal record. Moreover, any juvenile committed to a secure facility under the direction of the Division of Youth Corrections must be released at age twenty-one. Utah Code Ann. § 62A–7–108(1). Therefore, because section 78–3a–25 applies only to individuals sixteen years of age or older, a juvenile in the statutory class who is left in the juvenile system faces a maximum potential sentence of five years or less.

The foregoing scenario is a dramatic contrast to that facing another juvenile in the same statutory class who is charged as an adult. "The effect of certification is to conduct the proceedings in every way as if the juvenile were an adult." *State v. Strunk*, 846 P.2d 1297, 1299 (Utah 1993). Aside from acquiring a permanent criminal record, this juvenile faces a potential life sentence or, in the case of a capital felony, death, obviously a much greater deprivation of personal liberty than that risked by his or her counterpart who is tried as a juvenile. Moreover, rather than facing detention at a juvenile facility, these offenders are eligible for housing in the state prison or other adult facilities. *See* Utah Code Ann. § 78–3a–30(9); *see also Bell*, 785 P.2d at 409 (Durham & Zimmerman, JJ., dissenting). Therefore, the statute permits two identically situated juveniles, even co-conspirators or co-participants in the same crime, to face radically different penalties and consequences without any statutory guidelines for distinguishing between them. This amounts to unequal treatment as that term has been used in the context of article I, section 24. *See Blue Cross*, 779 P.2d at 637; *Malan*, 693 P.2d at 670; *see also Kent v. United States*, 383 U.S. 541, 554, 86 S.Ct. 1045, 1053–54, 16 L.Ed.2d 84 (1966) (highlighting significant differences between juvenile and adult criminal proceedings). However, this finding alone does not invalidate the statute. The principle of uniform operation of laws requires invalidation of the statute only if defendants can demonstrate that this disparity is unreasonable in relation to the purpose of the statute. The final step in our analysis, therefore, is to determine

whether there is a "reasonable relationship" between the purpose of the Act and the means adopted by the legislature to enact that purpose. *Blue Cross*, 779 P.2d at 637; *Malan*, 693 P.2d at 670.

▆▆ Section 78–3a–1 of the Code states that the purpose of the Act is to

promote public safety and individual accountability by the imposition of appropriate sanctions on persons who have committed acts in violation of law [and];

. . .;

consistent with the ends of justice, strive to act in the best interests of the children in all cases and attempt to preserve and strengthen family ties where possible.

Utah Code Ann. § 78–3a–1(1), (7).[5] Defendants concede that this is a legitimate purpose for enacting a juvenile courts act. The only consideration, then, is whether the scheme imposed by section 78–3a–25 is reasonable in relation to this purpose. We conclude that it is not.

▆▆ The State argues that the direct-file provision of the Act is reasonably related to the statute's stated purpose because there is a legitimate need to try certain violent juveniles as adults. We agree with the State's assertion of need but observe that the legislature has failed to specify *which* violent juveniles require such treatment, instead delegating that discretion to prosecutors who have no guidelines as to how it is to be exercised. Legitimacy of a goal cannot justify an arbitrary means. The State asserts that this problem is cured by the fact that prosecutors often have legitimate reasons for wanting to leave persons eligible for adult prosecution in juvenile court. But the *statute* does not require the prosecutor to have any reason, legitimate or otherwise, to support his or her decision of who stays in juvenile jurisdiction and who does not. Legitimacy in the purpose of the statute cannot make up for a deficiency in its design. Section 78–3a–25 is wholly without standards to guide or instruct prosecutors as to when they should or should not use such influential powers.[6] The total absence of such standards makes the Utah statute unique among those of all other states employing any type of adult prosecution of juvenile offenders. It is ironic that the Act sets out in thirteen full paragraphs all of the factors that a *court* must consider to certify a juvenile into the adult system, Utah Code Ann. § 78–3a–25(2)(a)–(j), but contains *no* guidelines for a prosecutor who may choose for any reason or no reason to place that juvenile into the adult system. *Id.* § 78–3a–25(6)(b).[7]

The parties in these cases have briefed this court at length on the use of direct-file statutes in other jurisdictions; pursuant to rule 24 of the Utah Rules of Appellate Procedure, both the State and Mohi filed supplemental briefs on this point. All parties contend that the use or nonuse of discretionary direct-file schemes in other jurisdictions should be persuasive on the question of the reasonableness

---

5. For a complete statement of the purposes of the juvenile courts, see Utah Code Ann. § 78–3a–1.

6. We note that this power is appropriately vested in the courts in section 78–3a–25(1)(a)(iii), which allows district courts to impose juvenile sentences when appropriate and allows juvenile courts to certify juveniles into adult jurisdiction. Significantly, this section specifies fairly extensive guidelines for making such determinations.

7. In several places, the dissent argues that the guarantees of article I, section 24 are satisfied by Utah's direct-file scheme because members of each subgroup created by section 78–3a–25 are treated equally. That is, the dissent argues that all juveniles who are chosen to be prosecuted as adults are treated alike and, likewise, all juveniles kept in the juvenile system are treated alike. Therefore, the dissent claims, there is no disparate treatment of like-situated individuals. The dissent repeats this argument by pointing out that all juveniles within the group of potential direct-file cases are possible subjects of prosecutor discretion and, therefore, because all were exposed to the risk of prosecutor selection, those actually chosen for removal have not been treated differently from those left in the juvenile system. Such reasoning, however, would justify the numerous "separate but equal" systems that have long been rejected as impermissible. A scheme which prosecuted all Caucasians in one way and all minorities in another could not be justified on the basis that all Caucasians were treated alike and all minorities were treated alike. Therefore, the dissent's argument ignores the core protection of article I, section 24, that persons similarly situated (such as all sixteen-year-old juveniles accused of murder) must be treated alike.

of Utah's statute. Unfortunately, the parties' reports regarding the discretion given to prosecutors in other jurisdictions are in conflict.

 In his opening brief, Mohi alleged that only five jurisdictions in the United States employ impure direct-file acts [8] in which prosecutors have discretion as to which juveniles to remove from juvenile to adult criminal jurisdiction.[9] In his brief and in oral argument, Mohi argued that because only one comparable statute has been challenged on constitutional grounds, there is relatively little guidance for this court from other jurisdictions. In response to this contention, the State filed a supplemental "All-states Summary" which, together with the State's oral argument, contended that thirteen statutes [10] contain impure direct-file provisions and that no court has ever ruled such a statute unconstitutional on any ground.

Having reviewed the applicable juvenile courts acts of all fifty states and the District of Columbia, together with any published opinions in which the constitutionality of such statutes has been treated, we conclude that Utah's Act is unique in the amount of uncircumscribed discretion given to prosecutors.

Currently, only eight jurisdictions, including Utah, employ impure direct-file provisions to any degree.[11] Of these eight, three

---

8. There are at least three types of statutory schemes that allow juveniles to be prosecuted as adults: (1) "pure" direct-file schemes, which *automatically* send certain juveniles to the adult criminal system on the basis of specific and articulated indicia, (2) "impure" direct-file schemes, which allow a prosecutor at least some discretion to choose which of similarly situated juveniles to remove from juvenile jurisdiction into the adult criminal system, and (3) *Kent* hearing schemes, taken from the case of *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), in which removal from juvenile to adult jurisdiction is preceded by a judicial hearing. Under such nomenclature, Utah's scheme would be considered impure.

9. The five states cited by Mohi are Arkansas, Colorado, Louisiana, Michigan, and Utah.

10. The thirteen jurisdictions cited by the State are Arkansas, Colorado, District of Columbia, Florida, Georgia, Louisiana, Michigan, Minnesota, Nebraska, New York, Utah, Vermont, and Wyoming.

11. The eight jurisdictions are (1) Arkansas, *see* Ark.Code Ann. § 9–27–318 (Michie 1993); (2) Colorado, *see* Colo.Rev.Stat. § 19–2–805 (Supp. 1994); (3) Florida, *see* Fla.Stat. ch. 39.047 (1993); (4) Louisiana, *see* La.Child.Code Ann. art. 305 (Supp.1994); (5) Michigan, *see* Mich. Comp.Laws § 600.606 (1993); (6) Nebraska, *see* Neb.Rev.Stat. §§ 43–247, –276 (1988); (7) Utah, *see* Utah Code Ann. § 78–3a–25 (Supp.1994); and (8) Wyoming, *see* Wyo.Stat. § 14–6–203(f) (1994).

The remaining five statutes characterized by the State as discretionary, which we consider to be either pure or *Kent* certification statutes, can be quickly distinguished from the other eight statutes listed above:

(1) District of Columbia, D.C.Code Ann. § 16–2301(3) (Supp.1989). We do not consider this an impure scheme because the code defines all persons sixteen and above as adult. *See id.* Therefore, statutorily, *all* violent offenders sixteen years old or older, rather than only those selected by the prosecutor, would be tried as adults.

(2) Georgia, Ga.Code Ann. § 15–11–5 (Supp. 1994). The Georgia statute allows prosecutors discretion only in deciding which juveniles who would otherwise be tried as adults to remove *into* the juvenile system. No discretion is allowed in determining which juveniles to prosecute as adults. Therefore, Georgia's scheme functions primarily as do New York's and Vermont's, discussed below.

(3) Minnesota, Minn.Stat. § 260.131(4) (1994). This statute gives prosecutors only the discretion to label a case "extended juvenile jurisdiction," which allows the court to consider both adult and juvenile penalties. This is not comparable to an impure statute. Ultimately, the discretion of which system to follow lies with the court, not with the prosecutor. *See* Minn.Stat. § 260.126 (1984).

(4) New York, N.Y.Crim.Proc.Law § 180.75 (McKinney 1993). This statute *requires* juveniles sixteen years and older who are accused of certain crimes to be tried as adults unless the district attorney requests that the case be tried in juvenile court. Here, any prosecutor discretion is limited to selecting juveniles to remain in family court; there is no prosecutor discretion as to which juveniles to place into the adult scheme. Moreover, it is not clear that a court would be bound to accept a prosecutor's recommendation even in this limited instance. Therefore, this statute is also free of the discretion employed in the statutes we are considering today.

(5) Vermont, Vt.Stat.Ann. tit. 33, § 5505 (1991). Like Georgia's and New York's schemes, Vermont's statute only allows prosecutors to select certain cases which would otherwise be tried in adult court to be tried in juvenile court. This scheme, which we note is further limited by

provide statutory guidelines to help the prosecutor determine whether juvenile or adult jurisdiction would be proper.[12] Therefore, there are only five states, including Utah, in which prosecutors are granted "unguided" discretion. In one of these five states, Colorado, statutory prerequisites narrow the field of juveniles who face potential prosecutor discretion. For example, one prerequisite is that only juveniles with prior records may be removed to adult jurisdiction. *See* Colo.Rev. Stat. § 19–2–805 (Supp.1994). Therefore, in actuality, there are only three states with schemes substantially similar to Utah's.[13]

In oral argument, the State claimed that "no other court in any jurisdiction had ever ruled any of the direct-file provisions unconstitutional on any grounds." Close examination reveals, however, that this statement is not as forceful as it initially appears.[14]

As indicated, there are only seven jurisdictions in addition to Utah that allow prosecutors discretion to select jurisdictions for juvenile offenders. In only two states has the constitutionality of these statutes been directly tested.[15] In Louisiana, constitutionality was tested in a case cited as persuasive authority by the State, *State v. Gachot*, 609 So.2d 269 (La.Ct.App.1992), *cert. denied*, — U.S. ——, 114 S.Ct. 478, 126 L.Ed.2d 429 (1993). However, contrary to the State's representations, *Gachot* offers no support for its position because the case was decided *before* Louisiana adopted an impure direct-file system. In other words, *Gachot* upheld the constitutionality of a prior scheme that did *not* allow prosecutor discretion. 609 So.2d at 272–73. Defendants all concede that Utah's scheme regarding juvenile transfer would be rendered constitutional if the element of prosecutor discretion were removed. Therefore, this case does not support the State's contention that Utah's discretionary scheme is constitutional.

The State also cites *Chapman v. State*, 259 Ga. 592, 385 S.E.2d 661 (1989), as persuasive authority. However, *Chapman* addresses primarily a separation-of-powers question. *Id.* 385 S.E.2d at 663. It offers little guidance on the questions of uniform operation and due process now before us. Furthermore, Georgia's statute currently vests adult criminal courts with jurisdiction over an enumerated class of juvenile offenders, absent any discretionary leeway for the prosecutor. Ga.Code Ann. § 15–11–5 (1994). Therefore, Georgia's scheme is now similar to Vermont's, wherein prosecutor discretion is generally limited to deciding which cases to remove to juvenile court and is not usually allowed in deciding which cases to remove to adult jurisdiction. Therefore, the Georgia cases do not squarely consider a scheme allowing the scope of discretion available to prosecutors under Utah's Juvenile Courts Act.[16]

precluding prosecutors from removing violent juveniles back into the juvenile system, does not allow prosecutors the discretion of where to file charges against violent juvenile offenders and is therefore inapplicable to our discussion today.

**12.** Florida, Nebraska, and Wyoming. We note that the dissent questions our inclusion of Florida in the list of states giving guidance to prosecutors. The dissent argues, citing Fla.Stat. § 39.047, that Florida prosecutors are given a report with procedural recommendations from a case manager but are nevertheless free to disregard the report and file charges wherever they choose. However, the dissent ignores that ultimately it is "the *court* [that] shall receive and consider [the] report" and that "[a]fter considering the ... report, the *court* shall ... determine" "the suitability or nonsuitability" of rendering juveniles eligible for adult sanctions. Fla.Stat. § 39.059(7)(a)–(c) (1993) (emphasis added). Therefore, we consider these reports significant. It is also worth noting that Florida has since amended its juvenile transfer scheme to remove

even more discretion from the hands of its prosecutors following criticism that the scheme employed excessive prosecutor discretion. *See* Donna M. Bishop & Charles E. Frazier, *Transfer of Juveniles to Criminal Court: A Case Study and Analysis of Prosecutorial Waiver*, 1991 Notre Dame J.L. Ethics & Pub. Pol'y 281, 289; Fla. Stat. § 39.0587 (Supp.1994).

**13.** Arkansas, Louisiana, and Michigan.

**14.** Nor may the statement be completely accurate. *See, e.g., Kelley v. Kaiser*, 992 F.2d 1509, 1515 (10th Cir.1993) (finding Oklahoma direct-file provision unconstitutional); *Lamb v. Brown*, 456 F.2d 18, 20 (10th Cir.1972) (same); *see also infra* note 19.

**15.** Colorado and Louisiana.

**16.** We note that other cases are cited, primarily by the State, as being indicative of constitutional soundness of the various schemes. These have

The other case that analyzes the constitutionality of a transfer scheme is *People v. Thorpe*, 641 P.2d 935 (Colo.1982). *Thorpe* considered an act that allowed prosecutors to decide whether to prosecute a certain class of offenders as juveniles or as adults. The court made two applicable pronouncements: First, the court observed that the legislature was the proper place to remedy undesirable laws.[17] *Id.* at 940. Second, the court rejected the appellant's claims of unconstitutionality because they had failed to demonstrate that the statutory scheme was applied in a selective way by prosecutors. *Id.* Therefore, the court did not specifically hold that Colorado's juvenile charging system was constitutionally sound; it held only that Thorpe had not met his burden of showing discrimination, which would allow the court to reach the constitutional issue. *Id. Thorpe*, therefore, is of limited value to us because of its failure to grapple with the constitutional issues, and we do not regard its analysis as persuasive.

Having considered the authorities cited by all parties, we conclude that Utah's Act, which grants prosecutors totally unguided discretion in deciding which members of the class of potential juveniles to actually try as adults, is unique among statutes currently in use in the United States. Our statutory scheme is at the extreme end of the spectrum of systems employing prosecutor discretion. While not dispositive, the fact that no other state has, at present, undertaken a process as arbitrary and unbridled as Utah's contributes significantly to our conclusion that the statute goes too far. There is no rational connection between the legislature's objective of balancing the needs of children with public protection and its decision to allow prosecutors total discretion in deciding which members of a potential class of juvenile offenders to single out for adult treatment. Such unguided discretion opens the door to abuse without any criteria for review or for insuring evenhanded decision making. No checks exist in this scheme to prevent such acts as a prosecutor's singling out members of certain unpopular groups for harsher treatment in the adult system while protecting equally culpable juveniles to whom a particular prosecutor may feel some cultural loyalty or for whom there may be broader public sympathy. Furthermore, the State has offered no plausible explanation of the necessity for such open-ended discretion.

The type of discretion incorporated in the Act is unlike traditional prosecutor

---

not been discussed because either the cases uphold the constitutionality of noncomparable statutes, such as pure direct-file statutes, or because the cases do not actually discuss constitutional challenges but focus on statutory claims. Notable among these is *Woodard v. Wainwright*, 556 F.2d 781 (5th Cir.1977), *cert. denied*, 434 U.S. 1088, 98 S.Ct. 1285, 55 L.Ed.2d 794 (1978), which in dictum seems to indicate that other jurisdictions have upheld discretionary statutes, *id.* at 784, but itself considers only a nondiscretionary filing scheme. *Id.* at 785. The cases cited by *Woodard* can be distinguished. For instance, *Cox v. United States*, 473 F.2d 334 (4th Cir.), *cert. denied*, 414 U.S. 869, 94 S.Ct. 183, 38 L.Ed.2d 116 (1973), and *Russell v. Parratt*, 543 F.2d 1214 (8th Cir.1976), both hold that the discretionary provisions at issue did not violate the separation of powers doctrine. That issue is inapposite to our present analysis. Other cases also indicate that Congress can vest the attorney general with the power to decide whether to prosecute certain juveniles as adults for violation of various federal crimes without a due process hearing. *See, e.g., United States v. Quinones*, 516 F.2d 1309 (1st Cir.), *cert. denied*, 423 U.S. 852, 96 S.Ct. 97, 46 L.Ed.2d 76 (1975); *Cox*, 473 F.2d 334. These cases are likewise unrelated to the issue now before us. Therefore, we do not need to further distinguish them.

The State also cites *Jahnke v. State*, 692 P.2d 911 (Wyo.1984), as holding a discretionary filing statute to be constitutional. *Jahnke*, as with several additional cases cited by the State, was distinguished from the scenario created by Utah's statute in *Bell. See Bell*, 785 P.2d at 409 n. 2. However, we further note that *Jahnke* failed to raise the issue of the statute's constitutionality to the trial court. Because this claim was raised for the first time on appeal, the court would not consider the merits of the claim because no clear error had been shown in the trial court's application of the statute. Therefore, this case did not consider the merits of the constitutional issues. *Jahnke*, 692 P.2d at 927–28. We are therefore unpersuaded by its rhetoric.

17. Colorado has in fact since altered its juvenile charging scheme. The statute now limits the amount of prosecutor discretion by requiring certain prerequisites before juvenile offenders may be charged in the adult system. Colo.Rev. Stat. § 19–2–805 (Supp.1994). Therefore, *Thorpe* upholds a statute that has since been amended.

discretion. Selecting a charge to fit the circumstances of a defendant and his or her alleged acts is a necessary step in the chain of any prosecution. It requires a legal determination on the part of the prosecutor as to which elements of an offense can likely be proved at trial. Moreover, such discretion is also beneficial to the public; it allows prosecutors to plea-bargain with offenders in some cases, saving the public the expense of criminal prosecutions. However, none of these benefits accompany the discretion to choose which juveniles to prosecute in adult rather than in juvenile court. The elements of the offense are determined by the *charging* decision, and it is only the charging decision that is protected by traditional notions of prosecutor discretion. *See Bordenkircher v. Hayes*, 434 U.S. 357, 364, 98 S.Ct. 663, 668–69, 54 L.Ed.2d 604 (1978) (decisions of whether and which charges to prosecute are within prosecutors' realm of discretion; *no* decision made by prosecutors may be based on "arbitrary classifications").[18] Choosing which court to file charges in has significant consequences for the offender, and the statute does not indicate what characteristics of the offender mandate that choice. The scope for prosecutor stereotypes, prejudices, and biases of all

kinds is simply too great. If it is the legislature's determination to have all members of a certain group of violent juveniles (such as repeat offenders, those who use guns, etc.) tried as adults, it is free to do so.[19] However, the legislature may not create a scheme which permits the random and unsupervised separation of all such violent juveniles into a relatively privileged group on the one hand and a relatively burdened group on the other. *See Wayte v. United States*, 470 U.S. 598, 608, 105 S.Ct. 1524, 1531, 84 L.Ed.2d 547 (1985) (prosecutor discretion is "limited"); *United States v. Bourgeois*, 964 F.2d 935, 938 (9th Cir.) (prosecutor discretion should not be "unfettered"), *cert. denied*, —— U.S. ——, 113 S.Ct. 290, 121 L.Ed.2d 215 (1992); *United States v. Mastroianni*, 749 F.2d 900, 911 (1st Cir.1984) (prosecutor discretion limited by fundamental conceptions of justice).

Utah's uniform operation of laws provision speaks directly to the type of discretion involved in section 78–3a–25, as opposed to the traditional discretion allotted prosecutors to determine what crime to charge. The challenged statute permits prosecutors to treat different offenders accused of the same crim-

**18.** The dissent argues that choice of arena, criminal or juvenile, is long-recognized prosecutor discretion. It bases this assertion on three cases: *In re Criminal Investigation, 7th Dist. Court Case No. CS–1*, 754 P.2d 633 (Utah 1988), *State v. Carter*, 578 P.2d 1275 (Utah 1978), and *State v. Garcia*, 504 P.2d 1015 (Utah 1972). These cases, however, are easily distinguished.

*Carter* and *Garcia* both stand for the proposition that the decision of which crime, if any, to charge against a person under a given set of facts is left to the prosecutor. *Carter*, 578 P.2d at 1277; *Garcia*, 504 P.2d at 1015–16. However, neither case even addresses the proposition claimed by the dissent, to wit, that selecting whether to prosecute an individual as an adult or as a juvenile is recognized prosecutor discretion. Both *Carter* and *Garcia* address discretion involved in selecting a crime to fit the surrounding facts. The discretion at issue here involves taking two individuals accused of the *same* crime and choosing to prosecute them in different arenas. Such discretion has *not* been recognized as legitimate by the cases cited by the dissent.

The dissent's reliance on *In re Criminal Investigation* is also misplaced. At issue there was the constitutionality of the Subpoena Powers Act. The petitioners there claimed that because the attorney general had the option of using a grand jury investigative scheme or the subpoena pow-

ers scheme to investigate criminal suspects, the discretion to choose between the two methods violated the suspects' constitutional right to equal treatment. A crucial difference between the facts in that case and the facts confronting us today is that a defendant has a recognized and a "critically important" liberty interest in the sentencing phase of his prosecution, but a suspect does not have a liberty interest in which of two acceptable means of investigation is used to investigate his case. Therefore, the holding in *In re Criminal Investigation* has no bearing in this case that clearly does affect one of the defendants' recognized liberty interests. *See Clatterbuck*, 700 P.2d at 1079.

**19.** Whether the legislature can try all juveniles as adults without any opportunity for review may raise federal constitutional questions. *See, e.g., Kelley v. Kaiser*, 992 F.2d 1509 (10th Cir.1993). "Having created the juvenile court system, under *Kent*, it is the State's decision to seek to treat a juvenile as an adult that, *in and of itself triggers the need for a hearing*." *Id.* at 1515 (emphasis added) (citing *Kent*, 383 U.S. 541, 86 S.Ct. 1045); *see also Lamb v. Brown*, 456 F.2d 18, 20 (10th Cir.1972). *Lamb* held portions of an Oklahoma charging scheme affording preferential treatment to one class of juveniles over another class of like-accused juveniles unconstitutional. *Id.*

inal offense differently. Thus, the same law operates disparately and nonuniformly on similarly situated juveniles. In a case where the prosecutor chooses to charge like-situated suspects with different crimes, the classic "prosecutorial discretion" question is *which* law to apply to an offender rather than how to apply the *same* law to different offenders. *See Bell,* 785 P.2d at 409 (Durham & Zimmerman, JJ., dissenting) ("This is not a traditional 'prosecutorial discretion' case."). Once an offender is charged with a particular crime, that offender must be subjected to the same or substantially similar procedures and exposed to the same level of jeopardy as all other offenders so charged to satisfy the constitutional requirement of uniform operation of the laws.[20]

We conclude that the provisions in section 78–3a–25 of the Code giving prosecutors undirected discretion to choose where to file charges against certain juvenile offenders are unconstitutional under article I, section 24 of the Utah Constitution.[21] Therefore, Mohi, Lundquist, and Chaides are remanded to the appropriate juvenile jurisdictions for certification proceedings consistent with the requirements in section 78–3a–25.[22]

### III. Statutory Recall Provisions

Because we have already remanded the cases of these defendants for certification hearings in juvenile court, there may be no immediate need for a ruling on the use or the lack of an appropriate recall remedy. However, because this issue is likely to recur and because Lundquist and Chaides challenge the repeal of the recall provision in the amended statute, we nevertheless consider defendants' claims concerning the need and use of recall procedures to reclaim juvenile jurisdiction for minors tried as adults.

■■■ Mohi individually attacks the recall provision of the Act effective when he was prosecuted. Specifically, he challenges the constitutionality of section 78–3a–25 (1993),

---

20. There are other circumstances in which similar offenses can be charged and prosecuted in different jurisdictions. There is overlapping jurisdiction for some misdemeanor offenses, for example, in the justice courts and the circuit courts. *See* Utah Code Ann. § 78–5–104. However, in some of these cases, there are separate governmental systems authorizing the prosecutions—e.g., city ordinances permitting prosecution of municipal code violations in circuit court and county ordinances permitting enforcement of the same laws in justice courts. In those cases, different governments have defined criminal offenses in similar ways, which is entirely permissible. More important, the potential penalties for these offenses are identical notwithstanding the jurisdiction in which they are adjudicated. The jurisdictions of the two possible courts are not only *concurrent,* they are *also coextensive.* That is, regardless of which court tries a case, the defendant will be subject to substantially similar treatment and exposed to substantially similar penalties as another like-accused defendant tried in a different jurisdiction. In this case, however, a singular state offense becomes justiciable and punishable in entirely different ways because the jurisdictions of the juvenile and district courts are not co-extensive.

21. Defendants have also challenged the direct-file provisions under state and federal due process and separation of powers claims. Because we invalidate the challenged sections of the statute under the uniform operation of laws provision of the state constitution, we do not reach defendants' other constitutional challenges, and

we express no opinion on the merits of those contentions.

We also note that the severability clause which existed in the previous version of section 78–3a–25(11) was removed from the amended version of the statute. *See* Utah Code Ann. § 78–3a–25 (Supp.1994). Nonetheless, our decision today affects only those parts of the statute that grant discretion to prosecutors to choose where to file first degree or capital felony charges against juveniles aged sixteen years or older. *See* Utah Code Ann. § 78–3a–25(6)–(8) (Supp.1994). Thus, our decision leaves in place the provisions of section 78–3a–25 that allow the prosecution of juveniles as adults following a certification hearing. *See id.* § 78–3a–25(1)–(5) (Supp.1994).

22. The dissent implies that this is the first time a statute has been held constitutional under the federal equal protection clause but unconstitutional under the state uniform operation clause. Again, this assertion is based on the erroneous conclusion that *Bell,* a plurality opinion, "held" this statute to be constitutional under the federal equal protection clause. However, even if *Bell* could be read as making a legal holding, the dissent's observation ignores this court's previous statements that the federal equal protection clause and Utah's uniform operation of laws clauses contain separate and independent guarantees. *See, e.g., Lee,* 867 P.2d at 577. Therefore, there is nothing specious about a holding under a state constitution that may not have underpinnings in the federal constitution's corresponding provision. The dissent's implications to the contrary have no legal basis.

which states that if a juvenile against whom a direct criminal information has been filed or a grand jury indictment returned wishes to have his or her case retained by the juvenile court, he or she must file a recall petition with the juvenile court within ten days of either the information or the indictment. Utah Code Ann. § 78–3a–25(10) (1993). Mohi never filed a recall petition with the juvenile court. While he admits he was apprised of the statute, he argues that he did not need to comply with its terms because he believed it patently unconstitutional. The State argues that Mohi's failure to file a recall petition precludes him from now attacking this section of the Act. We agree.[23]

█ We have previously held that before a party can challenge the constitutionality of a statute, he must be adversely affected by its operation. *State v. Hoffman,* 733 P.2d 502, 505 (Utah 1987) (party may challenge statute only if basis of challenge would be, or is, applied to his detriment); *Sims v. Smith,* 571 P.2d 586, 587 (Utah 1977) (party must be adversely affected by statute to acquire standing); *see also Alabama State Fed'n of Labor v. McAdory,* 325 U.S. 450, 461, 65 S.Ct. 1384, 1389–90, 89 L.Ed. 1725 (1945) (appellate courts should refrain from deciding issue "except with reference to the particular facts to which it is to be applied"). Because Mohi never petitioned for and was therefore never denied recall, he cannot now claim that the recall procedure denied him due process. Mohi argues that the statute lacks adequate guidelines for instructing judges as to when to grant recall and that the ten-day filing period is insufficient to allow parties time to prepare a petition. For the reasons stated above, his arguments lack merit. First, because his case was never considered by a juvenile court judge, he cannot now claim that the judge was improperly guided. Likewise, he cannot claim that he had insufficient time to file a petition when no effort was made to prepare the petition within the given time or to request an extension of time. The petition in question requires no evidence or affidavits but only a formal request for a subsequent hearing on the issue. We are not persuaded that the ten-day period is so patently offensive that Mohi should be excused from attempting to comply with its provisions.

█ Lundquist and Chaides challenge the amended Act in part on the ground that the legislature has removed the recall provision that Mohi claims was inadequate. They argue that by depriving them of a hearing to determine whether adult or juvenile court would be a proper forum for their cases, the amended statute denies them due process. This argument is also without merit. As stated above (and as conceded by all parties), juveniles have no constitutional right to be tried as juveniles. *Bell,* 785 P.2d at 399. Therefore, if they were properly charged in adult court in the first place, Lundquist and Chaides would have no state due process right to a hearing to determine whether they can be retained as adults for trial.[24] As part II of this opinion states, the state is not required to give juvenile status to anyone. However, once the legislature enacts a law classifying a certain group as juveniles, it must apply that law uniformly. If, on the other hand, it uniformly decides to remove a certain class of persons from the category of "juvenile offender," it does not need to allow those persons a hearing on the matter. Because they have no "right" to juvenile treatment, defendants cannot claim that their juvenile status was unconstitutionally removed by the legislature.

## IV. Juvenile Detention

█ Lundquist and Chaides argue that the district court erred when it ordered them to be detained in the Utah County Jail while awaiting trial rather than ordering their detention in the youth correctional facility. Both raised the issue of proper juvenile housing at the trial court. Following a hearing, Judge Dimick sent both juveniles back to the Utah County Jail.

---

23. We note that our decision will not leave unanswered an important constitutional question regarding Utah's Juvenile Courts Act because the provision Mohi attacks has been subsequently removed from the Act.

24. *But cf. Kelley,* 992 F.2d 1509 (discussed *supra* note 19).

Judge Dimick's ruling complies with the Act, which plainly states, "A child held for criminal proceedings under Section 78–3a–25 may be detained in a jail or other place of detention used for adults charged with crime." Utah Code Ann. § 78–3a–30(9) (Supp.1994). Defendants argue, however, that the trial court should have found this section to be unconstitutionally void for vagueness. By focusing on the word "may," defendants claim that this section of the Act gives courts discretion without giving them the necessary guidance on how to apply their discretion. We disagree. First, defendants fail to demonstrate why this particular section of the statute should not be read in conjunction with the stated purpose of the Act, Utah Code Ann. § 78–3a–1. *See State in re Salas,* 520 P.2d 874, 875 (Utah 1974) (applying general purpose of Act to individual sections contained therein).[25] We note that subsections of the challenged statute further indicate the legislature's intent for courts to balance the needs of children against the need for public safety. *See, e.g.,* Utah Code Ann. § 78–3a–30(8)(b) (Supp. 1994) (directing courts to consider "safety" and "welfare" of offenders when placing them in custody to protect the state).

Second, defendants' argument is based on a peculiar reading of the statute that is not required by its plain language. Section 78–3a–30(9) states that a child *"may* be detained in jail or *other* place of detention used for adults charged with crime." *Id.* (emphasis added). Defendants' reading of the statute would allow judges to place juvenile offenders in either adult or juvenile detention. This reading is possible only by placing extreme emphasis on the word "may." Defendants argue the statute means that a court *may* place a child in one of the available adult facilities but is not required to place the child in adult detention. The plain meaning of the language, however, gives the court only the option of county jail or another *adult* detention center. Because defendants have offered no support to their argument or any legislative history to indicate that the plain meaning of the statutory language should not be given effect, their argument fails.

 Finally, defendants' argument fails for lack of legal support. By claiming that the statute in question is unconstitutionally vague, defendants have the burden of coming forward with evidence to indicate that the statute is so ambiguous as to make reasonable minds guess as to its meaning. *State v. Frampton,* 737 P.2d 183, 191–92 (Utah 1987); *see also Kolender v. Lawson,* 461 U.S. 352, 358, 103 S.Ct. 1855, 1858–59, 75 L.Ed.2d 903 (1983); *Papachristou v. City of Jacksonville,* 405 U.S. 156, 162, 92 S.Ct. 839, 842, 31 L.Ed.2d 110 (1972). Defendants have neither made such a showing nor asserted any legal support to justify their argument. Furthermore, as indicated above, we do not perceive any ambiguity in the statute. For the foregoing reasons, defendants' argument that juveniles properly charged as adults must be housed with juveniles while awaiting trial is rejected.[26]

## CONCLUSION

On the basis of the foregoing analysis, we hold section 78–3a–25(6)(b) and (7) to violate article I, section 24 of the Utah Constitution. Consequently, the orders of the trial courts herein are reversed, and defendants are re-

**25.** This observation does not undermine our analysis in part II of this opinion. Even though the Act's objectives, Utah Code Ann. § 78–3a–1, have been read into subsequent sections of the Act, prosecutors are still statutorily unguided as to which juveniles are proper subjects of an adult criminal prosecution. We note that *Salas* indicated that the guidelines contained within the section assist *courts* in exercising their discretion. 520 P.2d at 875. Prosecutors, unlike courts, are not disinterested and unbiased actors in the process of criminal prosecutions; they represent a party in the litigation. Therefore, guidance given to courts to balance the needs of children with the need for public safety does not create adequate guidelines for prosecutors whose role, unlike that of the court, requires them to be advocates only for the people of the state.

**26.** Nonetheless, defendants' arguments do raise an issue that should be at the forefront of judges' minds when making certification decisions. Because juveniles tried as adults will be housed with adults and, if convicted, incarcerated with adults, courts should consider the particular needs and circumstances of individual defendants regarding housing while making final determinations of appropriate jurisdiction.

manded to the jurisdiction of the juvenile courts for certification proceedings.

STEWART, Associate C.J., concurs.

ZIMMERMAN, Chief Justice, concurring:

I consider this a close case. There are certainly analogies between the discretion exercised under the statute in question and the other discretionary decisions routinely permitted prosecutors, as Justice Russon's dissent notes. However, on balance, I am persuaded that the position Justice Durham and I took in *State v. Bell*, 785 P.2d 390, 407 (Utah 1989), remains sound. The discretion granted here is sufficiently broad and unfettered and its consequences sufficiently important for the juveniles accused that it differs in kind, for Utah constitutional purposes, from the examples relied upon by Justice Russon. For that reason, I join the majority today.

It is important to note that the majority finds only this particular method used by the legislature to address the problem of the serious youth offender to be unconstitutional. Today's decision should not be read in any way as minimizing the problems of violent youth crime. These problems are real. But the mere fact that a real problem exists does not mean that the constitution's limitations on how government power may be used can be ignored in the rush to find a solution.

During the last session, the legislature enacted a new and more comprehensive approach to the problem of violent youth crime, one in which the legislature took it upon itself to categorize the crimes that deserve an adult response and those that do not, rather than leaving the matter to the prosecution. Today's decision does not purport to address the constitutionality of this new scheme. It treats only the old.

RUSSON, Justice, concurring and dissenting:

While I fully agree with the majority's analysis and result in part III, "Statutory Recall Provisions," and part IV, "Juvenile Detention," I strongly disagree with the majority's analysis and result in part II, "Uniform Operation of Laws." In part II, the majority addresses Utah Code Ann. § 78–3a–25, which grants prosecutors discretion in cases involving a juvenile offender to file either criminal charges in "adult" court [1] or a civil action in juvenile court.[2] The majority holds this section unconstitutional on the basis of an erroneous interpretation of the uniform operation of laws provision of article I, section 24 of the Utah Constitution. Because the majority's interpretation oversteps any reasonable boundary of the rights which that provision is designed to protect, I dissent.

## I. PROSECUTORIAL DISCRETION GENERALLY

To place the prosecutorial discretion granted by Utah Code Ann. § 78–3a–25 in its proper perspective, it is important to first examine the breadth of discretion generally given to prosecutors. It is well established that a prosecutor's decision to charge or not to charge an individual with a criminal violation is protected by traditional notions of prosecutorial discretion. *See Bordenkircher v. Hayes*, 434 U.S. 357, 364, 98 S.Ct. 663, 668–69, 54 L.Ed.2d 604 (1978). As the Supreme Court stated therein:

In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and *what charge to file* or bring before a grand jury, *generally rests within his discretion.* Within the limits set by the legislature's constitutionally valid definition of chargeable offenses, *"the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation"* so long as *"the selection was [not] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification."*

---

1. For ease of reference, district and circuit courts will be referred to collectively as adult courts.

2. All proceedings before the juvenile court are civil proceedings. *See* Utah Code Ann. § 78–3a–44(1) (stating that "[p]roceedings in children's cases shall be regarded as civil proceedings, with the court exercising equitable powers").

*Id.* (emphasis added) (footnote omitted) (quoting *Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962)).

Similarly, in *State v. Bell,* 785 P.2d 390 (Utah 1989), the lead opinion of this court stated:

> This jurisdiction has long recognized the vital role of the prosecution and the importance of affording that body the discretion, within permissible limits, to exercise its function. Certainly, we are compelled ... to recognize this discretion as it preserves the constitutional concept of separation of powers. Also, it must be recognized that the prosecutor has at his or her disposal in making such a decision the criteria provided for elsewhere in the statute, the purpose of the Juvenile Courts Act, and the standards governing the duties of his or her office.

*Id.* at 404 (footnotes omitted).

There are numerous instances in which prosecutors are granted the same or substantially similar discretion that is at issue in the case before us. For example, the prosecutor has the discretion in regard to an alleged criminal act to file felony charges, or misdemeanor charges, or no charges whatsoever. In fact, the prosecutor can even do so in relation to a single criminal act involving more than one person. For instance, assume that three men, A, B, and C, commit an armed robbery together. A has a long history of felony arrests and convictions and is the one who actually perpetrates the offense. B has a couple of misdemeanor convictions and stands watch while A carries out the crime. C has no criminal record, drives the getaway car, was reluctantly talked into being a part of this crime by the coercion of his comrades, and agrees to testify against them. I doubt that members of this court would proclaim "unconstitutional discretion" if the prosecutor charged A with a felony, B with a misdemeanor, and C with nothing at all. In fact, this court so held in *State v. Garcia,* 29 Utah 2d 52, 504 P.2d 1015 (1972), which stated:

> It is not a function of the courts to review the exercise of executive discretion, and we cannot say that it was error for the prosecutor to treat the defendants in a different

manner, and we cannot review the prosecutor's decision to proceed against one defendant under an information charging him with a felony and reducing the charge against the codefendant to a misdemeanor.

*Id.* at 53, 504 P.2d at 1015–16 (footnote omitted).

In *State v. Carter,* 578 P.2d 1275 (Utah 1978), this court ruled that Utah Code Ann. § 76–8–1001, which grants a prosecutor discretion to charge or not to charge an offender as a habitual criminal, is constitutional. *Id.* at 1277. As the court stated therein, "[D]iscretion rests in the prosecutor in every case as to whether or not to charge a violation of a criminal statute. Some selectivity is always permitted, so long as the election is not discriminatorily based on classifications of race, national origin, sex, religion, etc." *Id.*

In the present case, there are no allegations of discrimination arising from selective prosecution. Rather, defendants attack section 78–3a–25 merely because it gives prosecutors discretion to file either criminal charges in adult court or a civil action in juvenile court, arguing that such discretion constitutes a violation of the uniform application of the laws under article I, section 24 of the Utah Constitution. However, as this court has stated in a similar context, "[I]n the absence of some showing that the prosecutor is classifying persons improperly, the mere existence of the discretionary power to select which mechanism to use does not offend the uniform operation of the laws provision of article I, section 24." *In re Criminal Investigation, 7th Dist. Court No. CS–1,* 754 P.2d 633, 658 (Utah 1988) (upholding constitutionality of statute which allowed alternative method of criminal investigation, as long as that alternative method satisfied due process). There are no allegations in the case before us that the discretion at issue was being practiced in a discriminatory manner. Accordingly, the prosecutor's discretion to file a criminal charge in adult court or a civil petition in juvenile court is the sort of prosecutorial discretion that has traditionally been permitted.[3]

---

3. Footnote 18 of the majority opinion materially misrepresents the dissent's position on this issue

## II. CONSTITUTIONALITY OF SECTION 78–3a–25

It is a basic principle that "legislative enactments are endowed with a strong presumption of validity and will not be declared unconstitutional unless there is no reasonable basis upon which they can be construed as conforming to constitutional requirements." *In re Criminal Investigation, 7th Dist. Court No. CS–1,* 754 P.2d 633, 640 (Utah 1988) (citing *Greaves v. State,* 528 P.2d 805, 806–07 (Utah 1974)). Thus, in evaluating a constitutional challenge to a statute, this court will construe the statute to avoid interpretations that conflict with relevant constitutional mandates, so long as the resulting construction does not conflict with the reasonable or actual legislative purposes of the statute. *Id.* (citing *Malan v. Lewis,* 693 P.2d 661, 671 n. 14 (Utah 1984); *State v. Casarez,* 656 P.2d 1005, 1008 (Utah 1982); *Zamora v. Draper,* 635 P.2d 78, 80 (Utah 1981)). As this court previously stated in *Stone v. Department of Registration,* 567 P.2d 1115 (Utah 1977):

> [W]hatever may or may not be the conviction of mind, or the personal desires of this court, or the justices thereof, to determine such policy, our commitment is to the principle of judicial restraint, necessary and desirable under our system, which honors the doctrine of separation of powers of the three branches of our government. Therefore, it is not within the province of the courts to intrude upon the legislative prerogative and declare a statute unconstitutional unless it is determined to be so beyond a reasonable doubt.

*Id.* at 1117 (footnotes omitted); *accord Greaves,* 528 P.2d at 806–07.

The burden of successfully challenging the constitutionality of a statute is on the appellant, and this burden is a heavy one. *Blue Cross & Blue Shield v. State,* 779 P.2d 634, 637 (Utah 1989); *City of West Jordan v. Utah State Retirement Bd.,* 767 P.2d 530, 537 (Utah 1988). Defendants' burden is particularly heavy in the present case because the statute at issue here is a later version of the one addressed in *State v. Bell,* 785 P.2d 390 (Utah 1989), in which this court held that the substantially similar prior version of the statute was constitutional under the Fourteenth Amendment to the United States Constitution.[4] *Id.* at 405. Although *Bell* was decided on federal, not state, constitutional grounds, inasmuch as the Fourteenth Amendment to the United States Constitution and article I, section 24 of the Utah Constitution embody the same general principles, *Greenwood v. City of North Salt Lake,* 817 P.2d 816, 820 (Utah 1991), and article I, section 24 "acts as Utah's equal protection clause," *Amax Magnesium Corp. v. Utah State Tax Comm'n,* 796 P.2d 1256, 1261 n. 23 (Utah 1990), it is incumbent upon defendants to demonstrate why the result should be different under state constitutional analysis.[5]

As an initial step in examining the constitutionality of Utah Code Ann. § 78–3a–25, it is necessary to determine the proper level of scrutiny to be applied in reviewing the statute. Defendants argue, and the majority agrees, that section 78–3a–25 should be reviewed under an intermediate "reasonableness" level of scrutiny, rather than under the minimal or "rational" level of scrutiny proposed by the State. Inasmuch as section 78–3a–25 withstands scrutiny using the higher

by suggesting that we view this type of prosecutorial discretion as a "choice of arena" question. A cursory reading of the dissent reveals that our view is simply that the discretion involved here is part of the general charging decision, not a separate "choice of arena" decision.

4. While the majority correctly points out that the analysis in parts II, III, and IV of the lead opinion in *Bell* was not supported by a majority of the court, nonetheless, the result therein, that section 78–3a–25 passed federal constitutional muster, did carry a majority of the court.

5. Although this court has previously stated that article I, section 24 may provide broader protec-

tion than the Fourteenth Amendment, this court has never held a statute constitutional under federal equal protection analysis yet unconstitutional under article I, section 24. Moreover, only in cases involving fundamental constitutional rights has the issue of a broader reading of article I, section 24 even arisen. *See, e.g., Condemarin v. University Hosp.,* 775 P.2d 348 (Utah 1989). Neither defendants nor the majority has persuasively established that such fundamental rights are at issue here. Accordingly, it is improper in the case at bar for this court to apply a more stringent equal protection analysis under article I, section 24 than would be applied under the federal constitution.

intermediate review preferred by the majority, that standard will be used to review the constitutionality of section 78–3a–25 under article I, section 24 of the Utah Constitution.[6]

Article I, section 24 states, "All laws of a general nature shall have uniform operation." By so providing, it "protects against two types of discrimination. First, a law must apply equally to all persons within a class. Second, the statutory classifications and the different treatment given the classes must be based on differences that have a reasonable tendency to further the objectives of the statute." *Malan v. Lewis*, 693 P.2d 661, 670 (Utah 1984) (citations omitted).

The first requirement of *Malan* mandates that the law be applied equally to all persons within a certain group or class. The classes created by section 78–3a–25 include not only a large group, all juvenile offenders who commit certain enumerated offenses, but also two subgroups, (1) those charged criminally by information in adult court and (2) those against whom civil petitions are filed in juvenile court. All members of the larger group are treated equally because all are subject to the same nondiscriminatory initial exercise of prosecutorial discretion. In addition, each member of each subgroup is treated equally to all other members of that subgroup. That is, each juvenile offender who is charged criminally and proceeds to adult court has the same rights and protections as all other juveniles in the adult court system; likewise, each juvenile who is petitioned against civilly and proceeds to juvenile court has the same rights and protections as others who are subject to juvenile court jurisdiction. Accordingly, section 78–3a–25 satisfies *Malan*'s first requirement because its provisions apply equally to all persons within the classes created.

Footnote 7 of the majority opinion misrepresents the dissent's position concerning the first requirement of *Malan*, thereby mischaracterizing the dissent's view as supporting "numerous 'separate but equal' systems that have long been rejected as impermissible." This characterization is incorrect and misleading. Obviously, a scheme that prosecutes all Caucasians one way and all minorities another would be unconstitutional under the dissent's view because the members of the larger group, all offenders, are not being treated equally. Under such a scheme, all minority offenders would be subject to discrimination in the initial exercise of prosecutorial discretion. However, in the present case, none of the defendants raise allegations that prosecutorial discretion is being practiced in a discriminatory manner here.

The second requirement of *Malan* is that the statutory classification and the different treatment given the classes created therein are based on differences that have a reasonable tendency to further the objectives of the statute. Under the second requirement of *Malan*, two questions arise. The first concerns whether the classification created by the statute is legitimate. This is not at issue in the present case inasmuch as defendants concede that the legislature could simply mandate direct filing against all juveniles who commit the crimes enumerated therein. By conceding that such a statutory classification is constitutional, defendants have chosen not to challenge the legitimacy of that classification.

The second question concerns whether the different treatment given the classes created by the challenged statute reasonably tends to further the objectives of the statute. One stated purpose of the Juvenile Courts Act is the promotion of "public safety and individual accountability by the imposition of appropriate sanctions on persons who have committed acts in violation of law." Utah Code Ann. § 78–3a–1(1). A statute that gives prosecu-

---

6. It is noted, however, that the right to be treated as a juvenile has never been considered the type of fundamental right which has traditionally triggered a heightened level of scrutiny. *Bell*, 785 P.2d at 399 (citing *Woodard v. Wainwright*, 556 F.2d 781, 785 (5th Cir.1977), *cert. denied*, 434 U.S. 1088, 98 S.Ct. 1285, 55 L.Ed.2d 794 (1978); *State v. Anderson*, 108 Idaho 454, 700 P.2d 76, 79 (App.1985)); *People v. Mason*, 99 Misc.2d 583, 586, 416 N.Y.S.2d 981, 984 (Sup.Ct.1979); *People v. Williams*, 100 Misc.2d 183, 186, 418 N.Y.S.2d 737, 740 (County Ct.1979); *Jahnke v. State*, 692 P.2d 911, 928–29 (Wyo.1984); *see also State v. Cain*, 381 So.2d 1361, 1363 (Fla.1980) (holding that a juvenile offender has no right "to be specially treated as a juvenile delinquent instead of a criminal offender").

tors discretion to determine which juvenile offenders should be criminally charged in adult court and which should be petitioned against in juvenile court serves both the end of protecting society and the goal of imposing appropriate sanctions on juvenile offenders. Moreover, the determination of the appropriate charge with its applicable sanctions is the sort of matter that has traditionally been left to the prosecutor's discretion. Insofar as this statute does just that, it is indistinguishable from any other type of prosecutorial discretion. Thus, the differences in treatment given to classes created by section 78–3a–25 reasonably tend to further the objectives of that section. Accordingly, I would hold that section 78–3a–25 meets *Malan*'s requirements for constitutionality.

Furthermore, the discretion involved in the matter before us does not raise the concerns of unequal application of the law within a statutory class or capricious or meaningless distinctions between classes that are raised in cases such as *Malan*. In *Malan*, this court invalidated an automobile guest statute which established differences in treatment that were unrelated to the purposes of the statute. This court determined that the resulting "crazy quilt" of recovery and barred recovery under that statute rendered the statute incapable of reasonably furthering its statutory objectives. *Malan*, 693 P.2d at 672.

We have no such "crazy quilt" here; rather, section 78–3a–25 is a well-reasoned effort to give prosecutors the discretion necessary to bring a charge carrying appropriate sanctions against juvenile offenders. This sort of discretion has never been considered vulnerable to facial equal protection challenges. Rather, it has been recognized as an integral component of our scheme of criminal justice. As the United States Supreme Court stated in *Wayte v. United States*, 470 U.S. 598, 607, 105 S.Ct. 1524, 1530, 84 L.Ed.2d 547 (1985):

> This broad discretion rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review. Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake.

In summary, the majority's argument erroneously assumes that similarly situated people are being treated differently. Under section 78–3a–25, all juvenile offenders who commit the offenses enumerated therein are subject to the same initial nondiscriminatory exercise of prosecutorial discretion as to whether to file criminal charges or a civil juvenile action against a certain offender. Accordingly, the prosecutorial discretion provided for in that statute is not different from all other kinds of prosecutorial discretion.

While the majority correctly concludes that "[o]nce an offender is charged with a particular crime, that offender must be subjected to the same or substantially similar procedures ... as all other offenders so charged," that is not at issue in this case. Because section 78–3a–25 specifically pertains to the prosecutor's charging decision, the equal protection concerns raised by the majority are not violated by this statute.

### III. OTHER STATES

Additionally, the majority has chosen, in accepting defendants' argument and overturning Utah Code Ann. § 78–3a–25, to depart from the accepted wisdom of every other court which has ruled on the issue. In examining their own direct-filing statutes, courts in virtually every other jurisdiction have consistently held that the discretion vested in prosecutors to decide which juveniles to file criminal charges against comports with equal protection principles. *See, e.g., United States v. Bland*, 472 F.2d 1329 (D.C.Cir.1972); *People v. Thorpe*, 641 P.2d 935 (Colo.1982); *In re Wood*, 236 Mont. 118, 768 P.2d 1370 (1989); *State ex rel. Coats v. Rakestraw*, 610 P.2d 256 (Okla.Crim.App. 1980). As this court acknowledged in the lead opinion in *State v. Bell*, 785 P.2d 390 (Utah 1989):

> This jurisdiction has long recognized the vital role of the prosecution and the importance of affording that body the discretion, within permissible limits, to exercise its function. Certainly, we are compelled, as are our sister states, to recognize this discretion as it preserves the constitutional

concept of separation of powers. Also, it must be recognized that the prosecutor has at his or her disposal in making such a decision the criteria provided for elsewhere in the statute, the purpose of the Juvenile Courts Act, and the standards governing the duties of his or her office.

*Id.* at 404 (footnotes omitted). The fact that this discretion has been codified into the statute at issue simply underscores the legislature's determination that to achieve the multiple and sometimes cross-cutting purposes of the juvenile court system, which concern both rehabilitation of the juvenile offender and the safety of the community, a prosecutor must be granted some degree of freedom to differentiate between juvenile offenders.

Nor is the majority persuasive in its attempt to distinguish Utah's statutory scheme from that of those states which have upheld direct-filing statutes. The majority initially draws a distinction based on whether the statute in question is a "pure" direct-filing statute or an "impure" direct-filing statute and does not even address pure direct-filing systems in other states, simply stating that they are "noncomparable." In pure direct-filing statutes, the prosecutorial discretion lies in deciding what charges to file: Certain charges must be tried in an adult criminal action, while other charges must be tried in a juvenile proceeding. *See, e.g.,* Okla.Stat.Ann. tit. 10, §§ 1104.2, 1112 (West Supp.1995). In essence, this system is no different from ours. As noted above, under section 78–3a–25, if the prosecutor elects to criminally charge a juvenile offender, that juvenile must be tried in adult court; conversely, if the prosecutor decides to file a civil petition against the juvenile, the matter proceeds to juvenile court.

Furthermore, other states with impure direct-filing statutes have found such statutes to be constitutional. For example, in *People v. Thorpe,* 641 P.2d 935 (Colo.1982), the Colorado Supreme Court concluded in circumstances similar to those in the present case that although an "as-applied" challenge could be sustained if there was selective prosecution, a facial constitutional challenge to its direct-filing system fails. *Id.* at 940. We should conclude that the same is true in our case.

The majority's attempt to distinguish other states' similar approaches is also unconvincing. For instance, the majority tries to distinguish Florida's system on the ground that the Florida statute provides guidelines to help the prosecutor determine whether to file in juvenile or adult court. However, this is not a persuasive distinction because the Florida statute actually only guides the case manager who initially reviews the juvenile's case and specifically allows the prosecutor the discretion to ignore the case manager's recommendation. *See* Fla.Stat. ch. 39.047 (1993). Although the majority correctly points out that under Fla.Stat. ch. 39.059, it is the court that determines whether a juvenile who has been found guilty of a criminal violation in adult court should be subject to "adult sanctions," that is not at issue here. The present case concerns discretion given at the *charging* stage, not at the *punishment* stage. At issue in the case at bar is the discretion to decide whether to file criminal charges in adult court or a civil petition in juvenile court. And in such cases, Florida, like Utah, grants this discretion to its prosecutors without imposing mandatory guidelines for the exercise of that discretion.

The majority states that Utah's scheme is "arbitrary and unbridled" and results in "uncircumscribed discretion" on the part of the prosecutor. However, among the states that allow direct filing, the Utah statute is one of the strictest in limiting the number of offenses which qualify for direct filing. The prosecutor is not given unbridled discretion; only certain specifically enumerated types of violations are eligible for direct filing. Accordingly, it is comparable to other states' systems and should likewise be held constitutional.

Lastly, the majority's claim that a "parade of horribles" would ensue if prosecutors were allowed the discretion provided by this statute is groundless. There is no evidence supporting the majority's assertion that section 78–3a–25 would lead to prosecutors' singling out members of unpopular groups for harsher treatment in the adult system. In fact, the very same argument, that prosecutors could single out certain groups for harsher treatment, could be made in reference to every criminal statute in the state code. In any event, defendants have not challenged

the statute on the ground that it is being applied in a discriminatory manner; they only challenge the statute *on its face.* Since the majority's concerns go to the application of the statute, not to its facial constitutionality, those concerns are irrelevant to the case at bar.

This is not to say, of course, that the legislature has unfettered power to enact laws relating to prosecutorial discretion. Prosecutorial discretion is always, at the very least, subject to review for abuse. The standards for determining that abuse should be filtered through the judiciary's reluctance to interfere with prosecutorial decision making. Since no allegations of abuse of prosecutorial discretion have been raised in the present case, I would hold section 78–3a–25 constitutional under article I, section 24 of the Utah Constitution. Accordingly, I dissent from the majority's holding to the contrary.

## IV. CONCLUSION

Based on the foregoing, I concur in sections III and IV of the majority opinion and dissent from section II.

HOWE, J., concurs in the concurring and dissenting opinion of RUSSON, J.